ATTORNEY GENERAL *vs.* JUSTICES OF THE MUNICIPAL COURT OF THE CITY OF BOSTON.

The municipal court of the city of Boston has jurisdiction to enforce the destruction of gaming apparatus and implements seized in a gaming-house on a searchwarrant issued from and returned to that court, under the Gen. Sts. c. 170, §§ 1–5, and St. of 1869, c. 364; and also the forfeiture and sale of furniture, fixtures or personal property seized, on the warrant, in such a house at a time when persons were there found playing at an unlawful game.

A court of competent jurisdiction, to which is returned a searchwarrant under the Gen. Sts. c. 170, §§ 1-5, and St. of 1869, c. 364, on which gaming apparatus and implements have been seized in a gaming-house, cannot lawfully cause them to be destroyed without first causing such notice to be given as is reasonable and likely to inform the parties interested, and affording to them an opportunity to be heard; and furniture, fixtures or personal property seized on the warrant cannot lawfully be forfeited and sold, except on written application, describing the things, and when, where and wherefore they were seized, and sufficient generally to inform any claimant what it is to which he must answer

in order to defend his right, and upon a judicial hearing with reasonable notice to claim-
ants and opportunity for them to have their rights determined by jury trial.

*It seems*, that money, seized in a gaming-house on a searchwarrant under the Gen. Sts.
c. 170, §§ 1–5, and St. of 1869, c. 364, is not subject to forfeiture.

PETITION, filed November 15, 1869, for a writ of *mandamus*
to be directed to the justices of the municipal court of the city
of Boston for the transaction of criminal business.

The petition alleged that on August 2, 1869, Harrison D. Lit-
tlefield presented to said justices his complaint under oath, " set-
ting forth that he believed that gaming apparatus and imple-
ments were used, kept and provided to be used, in unlawful
gaming, in certain rooms resorted to for the purpose of unlawful
gaming, in a certain building situated and numbered 9 in How-
ard Street, in said Boston, that is to say, in the rooms in the
second story of said building, and also that furniture, fixtures and
personal property were contained therein, and might be found
therein at a time when persons were there found playing at un-
lawful games, which said rooms were occupied by some person
whose name was to said complainant unknown, and praying for
a warrant to search therefor and to seize the same; that upon
this complaint a warrant was duly issued, addressed to the sheriff
of Suffolk, his deputies, and the constables and police officers of
said city of Boston, and the constable of the Commonwealth, or
either of his deputies, commanding them to enter said premises
and search for and seize said gaming apparatus and implements,
and if the same, or any part thereof, should be found on such
search, to bring said apparatus and implements so found, together
with the body of the person or persons in whose possession found,
if they might be found in said city, before said court, to be dis-
posed of and dealt with as to law and justice should appertain,
and in like manner to search for and seize all the furniture, fix-
tures and personal property found in the rooms described, at the
time when any persons were there found playing at any unlaw-
ful game, and to bring said furniture, fixtures and personal prop-
erty before said court, to be disposed of and dealt with as to law
and justice should appertain; that said warrant was duly com-
mitted to said Littlefield, a deputy of the constable of the Com-

monwealth, for service, who duly made return thereon, that he on said second day of August entered and searched said premises, and there found and seized certain implements of unlawfu. gaming, and certain personal property and furniture, as particularly set forth in his said return, and that he had the same be · fore the court, and prayed for an order to dispose of the same, legally, for the reason that at the time of said seizure an unlawful game was being played for money, and said game was stopped by him; that afterwards said Littlefield made formal application to said court by motion that said gaming apparatus and implements so found and seized be burned or otherwise destroyed by the constable of the Commonwealth, and that a decree of condemnation might issue according to law, as authorized in the St. of 1869, *c.* 364, § 3, against the furniture and personal property so found and seized; and that said motions, having been presented to the said court in writing, and placed on file with the records of said court, were thereupon disallowed by said court, for the reason that said court has no jurisdiction in the premises."

It further alleged " that by the Gen. Sts. *c.* 170, §§ 1–5,* and

---

* By the Gen. Sts. *c.* 170, § 2, any magistrate authorized to issue warrants in criminal cases may, upon complaint made on oath as described in § 1, "issue searchwarrants, when satisfied that there is reasonable cause, in the following cases, to wit: First. To search for and seize counterfeit or spurious coin, forged bank notes, and other forged instruments, or tools, machines or materials, prepared or provided for making either of them.    Second. To search for and seize books, pamphlets, ballads, printed papers, or other things, containing obscene language, or obscene prints, pictures, figures or descriptions, manifestly tending to corrupt the morals of youth, and intended to be sold, loaned, circulated or distributed, or to be introduced into any family, school or place of education. Third. To search for and seize lottery tickets or materials for a lottery, unlawfully made, provided or procured for the purpose of drawing a lottery.   Fourth. To search for and seize gaming apparatus or implements used, or kept and provided to be used, in unlawful gaming, in any gaming-house, or in any building, apartment or place resorted to for the purpose of unlawful gaming."

By § 3, "all searchwarrants shall be directed to the sheriff of the county or his deputy, or to any of the constables of a city or town, commanding such officer to search, in the daytime, the house or place where the stolen property or other things for which he is required to search are believed to be concealed

by the St. of 1869, *c.* 364,* the justices of the said court have jurisdiction in the premises; and that if they fail to exercise the same there will be a manifest failure of justice in the administration of the criminal laws of the Commonwealth;" and therefore the petitioner prayed that a writ of *mandamus* might be issued, directed to said justices, " requiring them to proceed and take jurisdiction of the said matters so brought before them, and

---

(which place and property, or things to be searched for, shall be designated and described in the warrant,) and to bring such stolen property, or other things, when found, and the persons in whose possession they are found, before the magistrate who issued the warrant, or some other magistrate or court having cognizance of the case."

By § 4, provision is made for the allowance of searches in the night time.

By § 5, "when an officer, in the execution of a searchwarrant, finds stolen or embezzled property, or seizes any of the other things for which a search is allowed by the provisions of this chapter, all the property and things so seized shall be safely kept by the direction of the court or magistrate, so long as necessary for the purpose of being produced or used as evidence on any trial. As soon as may be afterwards, all such stolen and embezzled property shall be restored to the owner thereof, and all the other things seized by virtue of such warrants shall be burnt or otherwise destroyed under the direction of the court or magistrate."

* By the St. of 1869, *c.* 364, § 2, the Gen. Sts. *c.* 170, § 2, are amended so "that all provisions relating to the search for and seizure of gaming apparatus or implements used, or kept and provided to be used, in unlawful gaming, in any gaming-house, or in any building, apartment or place resorted to for the purpose of unlawful gaming, shall also apply to the search for and seizure of all the furniture, fixtures and personal property found in such gaming-house, building, apartment or place, at the time when any persons are there found playing at any unlawful game."

By § 3, "after the seizure of any furniture, fixtures or personal property, as provided in the preceding section, application shall be made to a court of competent jurisdiction for a decree of condemnation of the same, and if, upon the hearing of said application, it shall be found and adjudged that the same, or any part thereof, was used as the furniture, fixtures or personal property of such gaming-house, building, apartment or place, and was found therein at a time when any persons were there found playing at any unlawful game, the same shall be adjudged forfeit, and the constable of the Commonwealth, or sheriff, or their deputies, shall sell the same in such manner as the court shall order, and, after deducting all costs and expenses allowed by the court, shall pay the balance of the proceeds of such sale to the use of the county."

to consider and determine whether or not the said gaming implements so found and seized should be burned or otherwise destroyed, under the direction of said court; and whether or not a decree of condemnation should issue against said furniture and personal property so found and seized, and the same be adjudged forfeit and sold under the direction of said court."

The justices of the municipal court of the city of Boston answered "that they admit the truth of the facts stated in said petition, and of all and singular the matters and things therein alleged, except as follows, to wit: they do not admit that jurisdiction of the said case is conferred upon them by the Gen. Sts. *c.* 170, §§ 1–5, or by the St. of 1869, *c.* 364, as alleged in said petition, or by any other provision of law, or that they have any jurisdiction of the said case;" and they prayed for the judgment of this court upon the question whether they had such jurisdiction, and submitted themselves to its order and direction.

The case was reserved by the chief justice on the petition and answer for the consideration of the full court, and was submitted to their determination on a written argument filed by the attorney general, and a copy filed by the respondents of their opinion, rendered by *Hurd,* J., in the refusal of the complainant's motions. The complaint, searchwarrant, officer's return and motions are printed in the margin.*

---

* "To the justices of the municipal court of the city of Boston, holden at said Boston, for the transaction of criminal business, within and for the county of Suffolk, Harrison D. Littlefield, of the city of Boston, in the county of Suffolk, deputy state constable, on oath informs the said justices, that he believes that gaming apparatus and implements are used, kept and provided to be used in unlawful gaming in certain rooms resorted to for the purpose of unlawful gaming, in a certain building situated and numbered 9 in Howard Street in said Boston, that is to say, in the rooms in the second story of said building, and also that furniture, fixtures and personal property are contained therein, and may be found therein at a time when persons are there found playing at unlawful games, which said rooms are occupied by some person whose name is to your complainant unknown, and prays for a warrant to search therefor and to seize the same. "Harrison D. Littlefield.

"Received and sworn to, before said court, this second day of August in the

NOVEMBER 1869. 461

Attorney General *v.* Justices of the Municipal Court of Boston.

AMES, J. The search warrant in the present case appears to have been issued in pursuance of the provisions of the Gen. Sts.

year of our Lord one thousand eight hundred and sixty-nine. Jacob Homer, Assistant Clerk."

" Suffolk, to wit: [Seal.] Commonwealth of Massachusetts.

" To the sheriff of our county of Suffolk, his deputies, and the constables and police officers of our city of Boston, and to the constable of said Commonwealth, or either of his deputies,                     Greeting.

" It now appearing to the said court that there is reasonable cause for the belief in the above complaint, we command you, and each of you, forthwith, with necessary and proper assistants, to enter, in the daytime or in the night time, into the rooms mentioned in the above information, and there diligently to search for and to seize said gaming apparatus and implements ; and if the same, or any part thereof, shall be found on such search, that you bring the said apparatus and implements so found, together with the body of the person or persons in whose possession found, if they may be found in our said city, before said court, to be disposed of and dealt with as to law and justice shall appertain. You are also commanded in like manner to search for and to seize all the furniture, fixtures and personal property found in the rooms described in the above complaint, at the time when any persons are there found playing at any unlawful game, and to bring said furniture, fixtures and personal property before said court, to be disposed of and dealt with as to law and justice shall appertain. You are also commanded, in like manner, to notify the informant to appear and give evidence touching the matter contained in the above complaint, when and where you have the said gaming apparatus and implements, furniture, fixtures, personal property and persons, or either of them.

" Witness, John William Bacon, Esquire, at Boston, this second day of August, in the year of our Lord one thousand eight hundred and sixty-nine.
                                        " Jacob Homer, Assistant Clerk."

" Suffolk, ss. Boston, August 2, 1869. By virtue of this warrant, I have this day entered and searched the within described premises, and there found and seized the following described implements of unlawful gaming, to wit, one faro table, one lay-out, one shuffling board, one cue case, eight cue cards, nine packs cards, four card cases, two deal boxes, forty cappers, three hundred and ninety checks, and one card-table cover ; also the following described personal property, furniture, &c., to wit, one sideboard and one marble top, one pine table, one hair-seat divan, one common lounge, eight cane chairs, one looking-glass, one plated pitcher, one lounge cushion, one tub, one towel, one fire shade, and one revolver ; also one hundred and thirteen dollars and fifty-two cents in currency, taken from the faro bank ; and now have the same before the court, and pray for an order to legally dispose of the same, for the reason that at the time of the above seizure of personal property an unlawful game was being

462 CRIMINAL CASES

Attorney General v. Justices of the Municipal Court of Boston.

*c.* 170, §§ 2, 3, 5, as modified by the subsequent St. of 1869 *c.* 364. The application and complaint were in proper form describing with all due precision the place that was to be searched, and giving, as the reason for the proposed search, the belief of the complainant that gaming apparatus and implements were used, and kept and intended to be used, in the place described as a common gaming-house; the warrant issued upon that complaint recites that it appears to the court that there is reasonable cause for that belief; and so far the proceedings appear to be regular and in conformity to the statute. The officer holding this warrant proceeds to make the search, and to seize the gaming apparatus and implements, and also the furniture, fixtures and personal property contained in the place searched, (which under the St. of 1869, *c.* 364, he is authorized to seize at the same time,) and he returns his warrant, with the property seized by virtue of it, into the court from which it issued. It does not appear from his return that he arrested anybody upon

played for money, and said game was stopped by me. Harrison D. Littlefield, Deputy State Constable."

" Commonwealth of Massachusetts. Suffolk, ss. Before the municipal court of the city of Boston, holden for the transaction of criminal business within and for said county. Boston, August 2, 1869. Commonwealth, on complaint of Harrison D. Littlefield, *vs.* Gaming Implements, etc. Now comes Harrison D. Littlefield, the officer who makes return on said warrant, and moves the court that the gaming apparatus and implements by him found and seized by virtue of said warrant in a certain building situated No. 9 Howard Street in said city, which said building is occupied by some person or persons unknown to said Harrison D. Littlefield, be burned or otherwise destroyed by Edward J. Jones, the constable of said Commonwealth. Harrison D. Littlefield, Deputy Constable of the Commonwealth."

" Commonwealth of Massachusetts. Suffolk, ss. Before the municipal court of the city of Boston holden for the transaction of criminal business within and for said county. Boston, August 2, 1869. Commonwealth, on complaint of Harrison D. Littlefield, *vs.* Gaming Furniture, etc. Now comes Harrison D. Littlefield, the officer who makes return on said warrant, and moves the court that a decree of condemnation may issue according to law, as authorized in § 3 of chapter 364 of the acts of 1869, against the furniture, fixtures and personal property found and seized by virtue of said warrant, as set forth in said return. Harrison D. Littlefield, Deputy Constable of the Commonwealth."

that warrant, although by the law he was authorized, and by the warrant he was required, to arrest not only the person or persons in whose possession the apparatus, &c., were found, but also all persons who were found present at the playing of any unlawful game in the place in question. We are therefore left to infer that all persons so present, at the time when the officer " stopped the game " as stated in his return, made their escape, and that the owner of the apparatus and other things seized under the warrant, or the person in possession of them, is some person unknown. No party defendant is before the court, and of course no issue is joined, and no trial in any constitutional or proper sense of the term is had. There is nothing before the court to be proceeded against, except the property seized; and the question then arises, what is to be done with that property ?

The 170th chapter of the General Statutes authorizes, with certain preliminary formalities and conditions, the issue of search-warrants for the seizure of personal property, stolen, embezzled or obtained by false tokens or pretences ; for counterfeit money and counterfeiters' tools ; for obscene books and pictures; for lottery tickets; and for gaming apparatus and implements. It is the duty of the officer serving the warrant to bring it, with the property and " other things " so seized, and with the persons having such stolen property and " other things " in their possession, before the magistrate who issued the warrant, or other magistrate or court having cognizance of the case. In the present case, the warrant was properly returned into the municipal court of the city of Boston, not only as the court from which it issued, but as the court having " cognizance " of the case. That court has jurisdiction concurrently with the superior court " in all offences punishable by fine not exceeding one hundred dollars, or imprisonment in the jail or house of correction not exceeding one year, or both said punishments." Gen. Sts. c. 116, § 13. St. 1866, c. 279. The punishment for the offence of keeping a common gaming-house is within those limits. Gen. Sts. c. 85, § 7. The purpose for which the property and other things so taken are to be brought into court seems to be, by the Gen. Sts. c. 170, § 4, that they shall be safely kept, under

the direction of the court or magistrate, so long as necessary for the purpose of being produced or used as evidence in any trial. The section then goes on to provide that, as soon as may be thereafter, that is to say, as soon as may be after it shall have ceased to be necessary to keep them for the purpose of being produced or used as evidence in a trial, the stolen and embezzled property shall be restored to the owner, and the other things seized by virtue of such warrant shall be burnt or otherwise destroyed under the direction of the court or magistrate.

In the present case, nobody has been arrested; nobody is accused by name or description of any offence; nobody is to be brought to trial; and the things seized are not wanted to be used as evidence. The terms of the statute, taken literally would seem to require their summary destruction in such a case, without any inquiry as to their ownership; and apparently the court or magistrate is to decide on mere inspection, and without any formality of notice or trial, whether the articles brought in with the warrant are correctly and truly described, in the complaint, as counterfeit money, or as obscene books or prints, or as gaming implements, as the case may be. But we think that the statute is not to be taken in quite such a narrow and literal sense. With regard to the various articles that may be seized upon a searchwarrant, it is easy to see, for instance, that it must be an important question, and may be a difficult matter to decide, whether bills that have been seized as counterfeits are spurious or genuine; or whether tools seized as counterfeiters' tools are really such, or honest and lawful implements. Even in the case of books or prints alleged to be obscene, there might be different opinions among different men and under varying circumstances. Pictures and illustrations, that might be considered unobjectionable in scientific and philosophical treatises upon medicine or surgery, might be highly indecent and immoral if intended for public circulation. Some of the finest works of art in painting and sculpture, though greatly admired by artists and critics, might be considered by a portion of the community as wholly improper for public exhibition. The general rule undoubtedly would be, that the magistrate would have

# NOVEMBER 1869. 465

Attorney General v. Justices of the Municipal Court of Boston.

no practical difficulty in deciding whether the alleged counter-feit money, or obscene books or prints, were of such a character as not to be capable of being applied to any lawful or honest use; of such a character that the law will not recognize them under any circumstances as property, or entitled as such to its protection. But cases may arise, in which there would be much practical difficulty in drawing the exact line, in a matter in which no exact standard of judgment can be prescribed in ad-vance. So also in the case of gaming apparatus and imple-ments, they may happen to be composed of valuable materials, capable in some other form of being applied to lawful and proper uses; they may be entirely harmless and innocent in themselves without any change of form, and may have value as merchandise in honest hands. If at the time of their seizure the owner or keeper should be known, and arrested to be dealt with by indictment or other criminal proceeding, the trial of the case against him would of course involve a judicial investigation into the character and nature of the things seized; but in a case in which the offender is not known, and nothing is before the court to be proceeded against but the things themselves, those things being in the custody of the law, and for that reason not in a position for the time being to be dangerous to the public morals, there would seem to be no reason why notice should not be given before passing and carrying into effect a decree that they should be burnt or otherwise destroyed. The statute does not in terms require that such notice should be given, but it is en-tirely contrary to the spirit of our laws that property which may be valuable should be literally destroyed without some attempt to notify the owner in season to give some explanation or offer some excuse, or to have a hearing on the question whether the property can be said to be of that class which the statute in-tends to condemn.

In the case at bar, the articles described in the return upon the warrant, and seized as falling within the description of gam-ing apparatus and implements, are in the custody and subject to the jurisdiction of the municipal court of the city of Boston. They are not needed for the purpose of being used as evidence

on any trial. We are of opinion that as to those articles it is within the power, and is also the duty, of that court, upon proper application, to order their destruction, provided that the court shall be satisfied that they are in fact gaming apparatus and implements, and provided also that notice be first given to the owner or keeper, if known, to appear and show cause why they should not be destroyed. If the owner be unknown, notice should be given by advertisement in some public newspaper published in the county, describing the articles, and the time, place and cause of their seizure, and naming the time at which the court will pass upon the question of their condemnation. In other words, the notice should be such as in the judgment of the court would be reasonable, and likely to convey the information to any party in interest. The owner certainly ought to have an opportunity to raise the question whether the very general terms used in the statute on this subject include everything that can be used for gaming purposes, or only such things as have little or no value except what may be found in their special adaptation to such purposes. It is easy to see that there might be cases in which that question would be altogether too complex to be decided by mere inspection.

With regard to the other articles seized at the same time, the question presents itself in a different aspect, and depends upon other considerations. The St. of 1869, c. 364, has greatly enlarged the range of the searchwarrant, and made it a much more efficient instrument for the suppression of establishments of this particular kind. The officer, to whom the warrant is committed, is required not only to seize the gaming apparatus and implements, but also " the furniture, fixtures and personal property, found at such gaming-house" " at the time when any persons are there found playing at any unlawful game." But articles falling within this latter description are not in themselves mischievous or objectionable. They are seized merely because they constitute part of the equipment of a gaming-house; but they do not on that account cease to be property and to have a value, for proper uses, which the law will recognize. As to them, the law that may be supposed to provide

for the summary suppression of nuisances, or the destruction of articles that are under all circumstances dangerous or prejudicial to the public morals, can hardly be said to be applicable. The law does not require that they should, in any event, be burnt or otherwise destroyed, as if they were not capable of being put to any good use; but that they shall be forfeited and sold for the benefit of the county treasury, on the ground that at the time of their seizure they were appropriated to a bad and unlawful use. The statute which has introduced this new provision into the law upon this subject does not point out with any precision the mode of proceeding in order to enforce the forfeiture. It merely provides, in very general terms, that there must be an application to a court of competent jurisdiction for a decree of condemnation, and that, upon the hearing upon said application, if it shall be found and adjudged, &c., the property shall be adjudged forfeit.

In the case at bar, the property in question was seized by virtue of a warrant from the municipal court, and is returned with the warrant into that court. That court has full jurisdiction over the offence for which the property became liable to seizure. The custody of the goods taken is incident to a lawful process issued from and returnable to that court. The keeper of the alleged gaming-house not having been ascertained or arrested, there is no reason why that process, and the goods seized by virtue of it, should be transferred to any other court. The statute plainly intends that there shall be a proceeding *in rem* against the property itself; and it is difficult to see why that proceeding, in the absence of any statutory regulation to the contrary, should not be had in the court which has the lawful custody of the property which is to be proceeded against. The provisions of the Gen. Sts. *c.* 153, do not in our judgment apply to the case at bar. That chapter is intended to apply to seizures without process; it gives a remedy, in the nature of a civil action, to any prosecutor (if he may be so called) who shall see fit to make a seizure for the purpose of recovering forfeited goods for his own benefit and advantage; it makes him liable not only to costs, but also to damages, if he does not succeed in estab-

lishing his claim. The provisions of that chapter are wholly inapplicable to the case of goods, seized upon a searchwarrant, returned and placed in the custody of the law, and proceeded against not for the private benefit of a prosecutor, but claimed to be forfeited to the public for a criminal offence. The St. of 1869 certainly was not intended to compel the police officer, who serves a searchwarrant, to prosecute a civil action at his own expense and risk as to damages and costs. The proceeding against the property in such a case seems to be incident to and dependent upon the process issued from the municipal court, and it is difficult to see why (there being no defendant personally on trial) it may not be effectively prosecuted in that tribunal.

It must be admitted that the St. of 1869, *c.* 364, § 3, is unfortunately somewhat vague and indistinct as to the mode of proceeding in such a case. We may safely assume that it never could have been the intention of the legislature that the unascertained owner of all this furniture and other property, who may be wholly ignorant of its seizure, and innocent of all participation in its unlawful use, is to be deprived of it without notice, without trial and without appeal, upon a mere *ex parte* motion, upon a summary process, in which the only evidence is the oath of some person that he believes the place in which it was found was a common gaming-house. There can be no doubt that, in order to fall within the familiar provisions of our Constitution, the application, intended in the section above referred to, must be in writing, and must set forth the subject matter with such formality and detail that any claimant of the property shall have the means of knowing what it is proposed to have adjudged forfeit; when, where and on what ground it was seized ; and generally, what it is that he is to answer to, in order to defend his right. The hearing and adjudication spoken of in the recent statute must be understood to mean a judicial hearing, with all its incidents, of notice, actual or constructive, trial, and the right of appeal to a jury if any claimant should see fit to appear and resist the application, or an inquiry by the court after default if he should not appear

We have therefore come to the conclusion that in a case like that at the bar the municipal court of the city of Boston is a court of competent jurisdiction, and may lawfully and properly proceed, to enforce the forfeiture provided for in the third section of the St. of 1869, *c.* 364. Upon a proper and formal application, we hold it to be the duty of that court, under such a state of facts, so to proceed. But a mere summary and *ex parte* motion, incidental to a process which is in its nature merely preliminary, and intended mainly for the seizure of the property for the purpose of bringing it within the jurisdiction of the court, is not the kind of application intended by the statute. There must be, as we have already said, a written application, describing the property, and setting forth all such particulars of time, place and cause of seizure as may fully inform the claimant what the charge is that he is to meet; and upon such application it would be the duty of the court to order such notice to be given as would be a proper preliminary to a judicial hearing, and such as shall reasonably give to the owner, whether known or unknown, a full opportunity to assert his rights. The motions which have been filed by the complainant do not come within this description, and for that reason do not furnish a proper foundation for any action on the part of that court.

With regard to the money seized by the officer, there seems to be no reason for saying that there is any legal authority for proceeding against it with a view to its forfeiture.

*Petition dismissed.*