## COMMONWEALTH *vs.* GAMING IMPLEMENTS.

Suffolk. November 23, 1875. — January 4, 1876. COLT, J., absent.

The Municipal Court of the city of Boston has jurisdiction to forfeit and order to be sold the furniture, fixtures, or personal property seized in a gaming-house on a search warrant issued from and returned to that court, under the Gen. Sts. *c.* 170, §§ 1-5, and the St. of 1869, *c.* 364, at a time when persons were there found playing an unlawful game.

A complaint on the Gen. Sts. *c.* 170, § 2, as amended by the St. of 1869, *c.* 364, § 2, alleged belief that " gaming apparatus and implements are used, kept and provided to be used in unlawful gaming in certain rooms resorted to for the purpose of unlawful gaming, in a certain building situated and numbered thirteen and one half in Hayward Place, in Boston, that is to say, in the rooms in the second, third and fourth stories of said building, and also that furniture, fixtures and personal property are contained therein, and may be found therein at a time when persons may there be found playing at some unlawful game, which said rooms are occupied by some person whose name is to your complainant unknown." The warrant issued on this complaint directed the officer to enter the rooms mentioned in the complaint and search for and seize said gaming apparatus and implements, and also to search for and seize all the furniture, fixtures and personal property found in the rooms described in the complaint, at the time when any persons are there found playing at any unlawful game. *Held*, that the premises to be searched were sufficiently described.

Under the St. of 1869, *c.* 364, § 2, authorizing the search for and seizure " of all the furniture, fixtures and personal property found in" a gaming-house, the officer is not limited in his right to seize, under a warrant following the words of the statute, merely the personal property liable to condemnation.

An information, filed after the return of a warrant issued on a complaint under the Gen. Sts. *c.* 170, § 2, as amended by the St. of 1869, *c.* 364, § 2, after reciting the complaint and the warrant, averred that "by virtue of said warrant" the inform ant, on a day named, entered the rooms described, and then and there seized certain gaming apparatus and implements, (describing them,) "and your informant did also then and there seize certain furniture, fixtures and personal property, used as the furniture, fixtures and personal property of said rooms." *Held,* that the information showed that the furniture, fixtures and personal property were seized by virtue of the warrant.

Upon the filing of an information after the return of a warrant issued on a complaint under the Gen. Sts. *c.* 170, § 2, as amended by the St. of 1869, *c.* 364, § 8, praying for the condemnation of certain gaming apparatus and implements, the clerk issued an order "in accordance with the order of the court," directing a service by copy of the information and order upon the persons in whose possession the articles were found, and by posting up a copy of the order and information on the building, where the seizure was made, fourteen days before the hearing. The return of the officer showed that after diligent search he could not find the parties named, and that their usual places of abode were unknown to him, and that the notice was served by posting a copy, as directed, on the building. *Held,* that publication of notice in the public papers was not required, and that the notice given was sufficient.

COMPLAINT on the Gen. Sts. *c.* 170, § 2, as amended by the St. of 1869, *c.* 364, § 2, alleging belief that " gaming apparatus and implements are used, kept and provided to be used in unlawful gaming in certain rooms resorted to for the purpose of unlawful gaming, in a certain building situated and numbered thirteen and one half in Hayward Place, in said Boston, and within the judicial district of said court, that is to say, in the rooms in the second, third and fourth stories of said building, and also that furniture, fixtures and personal property are contained therein, and may be found therein at a time when persons may there be found playing at some unlawful game, which said rooms are occupied by some person whose name is to your complainant unknown," and praying " for a warrant to search there for and to seize the same." The warrant issued on this complaint directed the officer to enter into the rooms mentioned in the complaint, and to search for and seize said gaming apparatus and implements, and bring the said apparatus and implements so found before the court, and also " to search for and to seize all the furniture, fixtures and personal property found in the rooms de

scribed in the above complaint, at the time when any persons are there found playing at any unlawful game, and to bring said furniture, fixtures and personal property before said court, to be disposed of and dealt with as to law and justice shall appertain."

The officer's return in the warrant was as follows :

" By virtue of the within warrant I have this day entered and searched the within described premises, and then and there found and seized the following gaming apparatus and implements, the same being then and there kept and provided to be used therein in unlawful gaming, and I now have the same before the court, to wit." [Then followed a description of the property seized.] " I also, at the same time and place, seized the following described furniture, fixtures and personal property, to wit." [Then followed a description of the property.] " The same being seized when persons were there found playing at an unlawful game called faro."

An information was thereupon filed in the said Municipal Court, by the officer serving the warrant, which, after reciting the complaint and the warrant, proceeded as follows: " Whereupon, by virtue of said warrant and in pursuance of law, your informant did, on the twenty-seventh day of said April, enter into the rooms described as aforesaid, the said rooms then being resorted to for the purpose of unlawful gaming, and then and there seized certain gaming apparatus and implements then and there used, kept and provided to be used in unlawful gaming, to wit : one faro table, nine packs of cards, one sweat cloth, five hundred chips, and one deal box and one gaming-table, all of said gaming apparatus and implements then being in the possession of Charles Childs, William Hersey, Charles Moore, Joseph Lyle, Henry Black and Thomas C. Adams.

" And your informant did also then and there seize certain furniture, fixtures and personal property used as the furniture, fixtures and personal property of said rooms, to wit : thirteen chairs, one side-board, two tables, eight spittoons, fifty yards of carpet, one foot stool, four table covers, five tumblers, one pitcher, and two looking-glasses and one rubber mat, the same being found in said rooms at a time when certain persons, to wit, said Childs, Hersey, Moore, Lyle, Black, and Adams, were there found playing at an unlawful game called faro ; all of said

furniture, fixtures and personal property then being in the pos-session of persons, whose names are to your informant unknown.

" And your informant further avers that the aforesaid warrant, on the twenty-eighth day of said April, was duly returned into said Municipal Court, with the doings of your informant indorsed thereon, and of record appears ; that it is not necessary that any of the aforesaid gaming apparatus or implements should be longer kept for the purpose of being produced or used as evidence on any trial ; that all of said gaming apparatus and implements, and all of said furniture, fixtures and personal property, are now before said court and hath by law become forfeited, wherefore he prays that the said gaming apparatus and implements may be burned or otherwise destroyed, under the direction of said court, and that the said furniture, fixtures and personal property may be condemned, and adjudged forfeited, and sold in such manner as the court may order, and the proceeds of such sale disposed of as provided by law."

Upon this information the court ordered that an order of notice issue, and that the same be served upon the said Childs, Hersey, Moore, Lyle, Black and Adams therein mentioned, and an order of notice, of which the following is a copy, thereupon issued :

" Commonwealth of Massachusetts.   Suffolk, ss.   Municipal Court of the city of Boston.   Upon the information aforesaid, it is ordered by the court that the informant notify the within described persons in whose possession said gaming apparatus and implements, and said furniture, fixtures and personal property, were found, and any and all persons claiming any right or interest in or to any of the things therein mentioned, to appear before the justices of said Municipal Court, to be holden at said Boston for the transaction of criminal business, on the nineteenth day of May, in the year of our Lord one thousand eight hundred and seventy-five, at ten o'clock in the forenoon, by leaving an attested copy of said information, and of the order of court thereon, with the within described persons in whose possession said gaming apparatus and implements, and said furniture, fixtures and personal property, were found, personally, if they can be found, or at their usual places of abode, if the same are

known, and by posting up a like attested copy of said information and order on the building therein named, the posting up of said copy, and the serving the same on the within described persons in whose possession said gaming apparatus and implements, and said furniture and fixtures and personal property, were found, to be fourteen days at least before the said last mentioned day, that they may then and there appear to answer said information, and for trial, and to show cause, if any they have, why the said alleged gaming apparatus and implements, and said furniture, fixtures and personal property, should not be forfeited, and why the prayer in said information set forth should not be granted."

On this order of notice the officer made the following return : " On the 29th day of April, in the year of our Lord one thousand eight hundred and seventy-five, by virtue of the within order, I served the annexed information and order as within directed, by posting attested copies thereof on the building situated and numbered thirteen and one half in Hayward Place, in said Boston, being the same building in which the gaming apparatus and implements, and the furniture, fixtures and personal property, described in said information were seized, on the twenty-seventh day of April, current, the serving said information and order as above stated, and the posting the same on the building as above stated, being more than fourteen days before the time within appointed for the trial. And I have made diligent search for the within described persons in whose possession said gaming apparatus and implements, and said furniture, fixtures and personal property, were found, and cannot find them within my precinct, and their usual places of abode are not known to me."

Nelson Tibbetts appeared as claimant of part of the property so seized. The Municipal Court adjudged the property claimed to be forfeited, and ordered it to be sold, and the claimant appealed to the Superior Court.

In that court Tibbetts filed the following claim : " And now comes Nelson Tibbetts, of the city of Boston, and says that he is the lawful owner of the personal property, viz., thirteen chairs, one sideboard, two tables, eight spittoons, fifty yards of carpeting, one footstool, four table covers, five tumblers, one plated

water-pitcher, two looking-glasses and one rubber mat, described in the above complaint; and he now claims said property, and asks that the proceedings against the same be dismissed, and said property returned to him."

Before the jury were empanelled the claimant filed a motion to dismiss the proceedings, for the following reasons:

" 1. The Municipal Court of the city of Boston has no jurisdiction further than to issue the warrant to search, and seize the property, and no authority is conferred by statute upon said court to render the decree therein named, ordering the furniture and other personal property to be sold, and from which decree the claimant appealed.

" 2. The proceedings and decree of the court appealed from were void, illegal and without authority of law, and this court cannot take jurisdiction of the proceedings on appeal.

" 3. The proceedings in this case are irregular and void, and contrary to the provisions of the Constitution of this state in this, that the furniture and other personal property for which a claim was made were appropriated to public uses without compensation, without a trial by jury, and by the decree of a court having no jurisdiction to adjudge the forfeiture of said property."

This motion was overruled, and the case proceeded to trial. It appeared in evidence that the property claimed was the property of the claimant Tibbetts; that he was not present at the time the gaming took place, and was not interested or connected with the parties who were engaged in the unlawful game; that a game called faro was, at the time of the seizure, being played by the persons named in the proceedings, in the room described in the complaint, &c., upon which the warrant to search was issued, said building being used for a gaming-house; that the furniture and other property seized were used in the apartments where the said game of faro was being played, as the furniture and other property of said building, and were seized as alleged.

The judge submitted to the jury the issues whether the articles claimed were used as the furniture, fixtures and personal property of said building, and whether the said building was a gaming-house, and the said articles found therein at a time when Charles Childs, William Hersey, Charles Moore, and other per

sons, were therein playing at an unlawful game, to wit, a game called .faro. The jury answered in the affirmative.

The claimant then asked the judge to rule as follows :

" 1. That the provisions of the St. of 1869, c. 364, did not give jurisdiction to the Municipal Court of the city of Boston to adjudge a forfeiture of the furniture and other property of the claimant, and ·that said court had no authority by statute to issue the decree named in the proceedings.

" 2. That if the provisions of said chapter conferred jurisdiction on said court to decree such forfeiture without a trial by jury, said provisions were contrary to the provisions of the Constitution of this state.

" 3. That the proceedings had in the Municipal Court were irregular and without authority of law.

" 4. That the proceedings, decree, &c., of said court, having been defective, irregular, contrary to the forms of law and the Constitution of the state, this court has no proper application before it for a condemnation of the personal property seized and described in the written claim filed in this court.

" 5. That, upon the evidence, the facts as found by the jury and the proceedings before this court, the claimant is entitled to a return of said property."

The judge declined to rule as requested, but did rule, that, upon the proceeding hereinbefore stated, and the facts found by the jury, the government was entitled to a decree of condemnation and forfeiture, and ordered the same to be entered; and the claimant alleged exceptions.

*G. W. Searle*, for the claimant. 1. The Municipal Court had no authority to decree a forfeiture and sale. The St. of 1869, c. 364, § 3, neither in terms nor in spirit confers any such authority. It evidently and expressly contemplates an application to another and different tribunal from the inferior court, otherwise the same language would have been employed in relation to the jurisdiction to issue the warrant and decree forfeiture. Instead of this, the language used is, " application shall be made to a court of competent jurisdiction " for a decree, and the natural inference from the changed phraseology would be that the Municipal Court was not intended as the competent tribunal at all, or else that it was not competent in all cases, that is, in cases

where the value is over twenty dollars. The natural statutory court for applications for adjudging forfeiture is the Superior Court. It is a civil proceeding. Fish forfeitures are always in that branch of the court. The words used nowhere fix the tribunal of forfeiture. This would seem to imply that it would vary, dependent on the amount. In the case of illegal measures, the language is, "the proper tribunal." Gen. Sts. *c.* 49, § 194. If this is not the correct interpretation of the statute, it is void, being in violation of the provision of the Constitution requiring trial by jury, in all cases where the value of property involved is over twenty dollars. The fact of the right of appeal does not cure the difficulty; as is apparent if there is no appearance in a case. The decision of the court in *Attorney General* v. *Justices of the Municipal Court,* 103 Mass. 456, does not settle this question. The only point there decided was that it was not a proper case for mandamus. All beyond that point is *obiter.*

2. The complaint and warrant did not sufficiently describe the premises to be searched. The rooms to be searched on the second, third and fourth stories are not pointed out.

3. The warrant is defective in authorizing the officer to seize all personal property, whether used in connection with gaming or not.

4. There is no allegation in the information that the property claimed was seized by virtue of the warrant.

5. The order of notice issued on the information was not legally served. Notice should have been given through the newspapers.

*W. C. Loring,* (*C. R. Train,* Attorney General, with him,) for the Commonwealth.

DEVENS, J. Many of the objections taken by the claimant of the personal property, which has been proceeded against, were fully discussed and passed upon in *Attorney General* v. *Justices of the Municipal Court,* 103 Mass. 456, and although the mandamus there prayed for was not granted, the conclusions stated are not to be treated as the claimant contends as *obiter dicta* only. The nature of the application was such, it being a petition for the purpose of compelling an inferior but important local tribunal to take jurisdiction of certain proceedings under the St. of 1869, *c.* 364, and to consider and determine whether certain

property found and seized should be condemned and sold under its direction, that it was appropriate to consider and determine what were the powers and duties of that court under that statute as well as under the Gen. Sts. c. 170, §§ 1-5, of which it was an amendment, even if in the particular case owing to certain defects in the proceedings no mandamus could properly be issued. So far, therefore, as this case is disposed of by the conclusions there reached, as we are satisfied upon reëxamination with their correctness, it would be superfluous to discuss or even to re-state them. We proceed to consider only those objections not there passed upon.

1. The complaint described with sufficient precision the premises intended to be searched. It alleges that the articles are " in certain rooms " in a building definitely described, " that is to say, in the rooms in the second, third and fourth stories of said building," which said " rooms " are further averred to be occupied by some person whose name is unknown to the complainant, and a warrant is prayed to search "there" for the articles complained against. The warrant authorizes a search of the rooms described in the complaint. The words, " the rooms in the second, third and fourth stories," distinguish them sufficiently from the other rooms in the building in which they are situated, and include all the rooms which answer this description.

2. The complaint, also, and the warrant, in the description of the articles intended to be seized, other than gambling apparatus or implements, follow the words of the St. of 1869, c. 364, § 2, which authorizes the search for and seizure of " all the furniture, fixtures and personal property found in such gaming-house." Section 3 renders liable to condemnation and sale all such property so found which was " used as the furniture, fixtures or personal property of such gaming-house," it being intended thereby to subject to forfeiture articles convenient and useful in themselves, which have been put to the improper use of making a gaming-house more comfortable or agreeable. But the officer is not limited, in his right to seize, merely to the personal property thus liable to condemnation. As one of the objects of the seizure is to obtain evidence of the unlawful business conducted in such house, he may also seize the other personal property there, even if it should not be found afterwards subject to

condemnation as the personal property of the gaming-house, as it may be of importance in furnishing evidence of the business there transacted.

Even if this were not so, a complaint and warrant which were too broad in their terms as including articles which would not properly be liable to seizure, would not be so far defective that the claimant of property properly described therein, and which was liable to seizure, could take advantage of such defect to quash the proceedings.

3. The objection, that the information, filed after the return of the search warrant against the property here claimed, does not show that this property had been seized under the authority of the warrant, cannot avail. The information, after alleging the previous steps and the terms of the warrant, contains a recital of the acts done by the officer who had served it, and the words by " virtue of said warrant," with which this recital commences, apply to and qualify the whole of it, the sentence which states the seizure of the " furniture, fixtures and personal property " by the officer, as well as that which precedes it, which states his entry into the premises and the seizure of the gambling apparatus.

4. Neither is the objection tenable that there was no sufficient notice of the information against the articles sought to be condemned. No notice is provided for by the statute in express terms, but as it would be contrary to the general spirit of our law to decree that property should be destroyed or declared forfeit without a suitable effort to notify the owner thereof, thus affording him an opportunity to be heard in relation thereto, it has been held that notice should be given. *Attorney General* v. *Justices of the Municipal Court, ubi supra.* It should be such notice as in the judgment of the court would be reasonable and likely to convey information of the facts and proposed proceedings to the party in interest. While service of the notice, where parties are unknown, by advertisement in the public papers may often be proper, yet it is not the only mode, and often not the most effectual. The order issued by the clerk, " in accordance with the order of the court," directed a service by copy of the information and order upon the persons in whose possession the articles were found, and by posting up a copy of the order and

information on the building where the seizure was made, fourteen days previous to the hearing. The return of the officer shows that after diligent search he could not find the parties named, and that their usual places of abode were unknown to him, and that the notice was served by posting a copy as directed on ɪ the building. This was a reasonable notice, and one which the court, before whom the proceedings were had, might well deem quite as likely to convey the information intended to the parties interested, as any which could be adopted.

*Exceptions overruled.*