23  300
o26  91

## NEWMAN v. THE PEOPLE.

1. PRACTICE IN CRIMINAL CASES.
An information as filed contained four counts separately set forth, but not numbered. The two counts coming first were quashed. Plea of not guilty as to the others, which the court in its instructions referred to as counts No. 1 and No. 2 in stating what they respectively charged. Verdict of guilty "as charged in the first and second counts in the information." *Held*, that neither court, counsel nor the jury were misled, and that no prejudice could have possibly resulted to the defendant.

2. SAME—VARIANCE.
The information charged that the defendant, a sheriff, corruptly agreed to omit to seize and take before a judicial officer gambling devices, while the proof showed an understanding between the defendant and the gamblers from whom the money was received that he was not to close the gambling houses. *Held*, that there was no material variance between the allegation and proof.

3. SAME—BRIBERY.
To constitute bribery the act of two persons is essential,—that of him who gives and of him who receives. Their minds must concur, but it is immaterial whether the giver makes the first advances or gives the money for some personal advantage to himself.

4. SAME—IGNORANCE OF THE LAW.
Ignorance of the existence of a specific statute against gambling is no defense to a prosecution against an officer for accepting a bribe not to perform his duty in the enforcement of the laws against gambling.

5. Constitutional Law—Presumption.

The presumption in favor of the constitutionality of a statute is to be indulged in all cases of doubt.

6. Same—Gambling Devices.

The provision of the statute (Mills' Ann. Stats., sec. 1343) that gambling devices kept and used for the purposes of gambling may be seized by sheriffs and other officers without notice to the owner is constitutional. Whether the provision of the same section authorizing the destruction of such devices without notice to the owner is constitutional is considered, but not positively decided.

7. Same—Act Bad in Part, When Void in Toto.

If the different provisions of a statute, or of a single section, are so connected as that one cannot be enforced without support from the others, and part are unconstitutional, all fail. But if, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of execution in accordance with the apparent legislative intent wholly independent of that which was rejected, it must be sustained.

8. Same—Arrest and Seizure Without Warrant.

It is the duty of a sheriff, when he knows or sees that a criminal offense is being committed, without warrant, and upon view, to arrest the offender and to seize and take into custody the subject of the crime, or the thing which aids the offender in its commission, and bring before a magistrate not only the person arrested, but also the thing seized.

9. Same.

No person can attack the constitutionality of a statute whose right it does not affect.

*Error to the District Court of Park County.*

THE plaintiff in error was the sheriff of Lake county, Colorado. In the district court of that county he was proceeded against under an information consisting of four separate counts, the first two of which charged him, as sheriff, with bribery under section 1274 of Mills' Ann. Statutes (Gen. Stats. '83, sec. 791), and the last two under section 1302 of Mills' Ann. Statutes (Gen. Stats. '83, sec. 818), with receiving money at two different times for omitting to perform a duty appertaining to his office as sheriff, in that, for the consideration named, he agreed to omit, and did omit, to seize and take before some judge or justice of the peace of Lake county certain gambling devices belonging to George L'Abbe,

which the latter had in possession to the knowledge of the defendant, which duty so to seize and take was imposed upon him, as sheriff, under section 1343 (Gen. Stats., sec. 849) of Mills' Ann. Statutes, which is as follows:

"It shall be the duty of all sheriffs, coroners, constables, police officers of cities, and other officers charged with executing the laws of this state, whenever it shall come to the knowledge of any such officer that any person has in his possession any cards, tables, checks, balls, wheels or gambling devices of any nature or kind, used or kept for the purpose of gambling or playing at any game of chance; or that any cards, tables, checks, balls, wheels or gambling devices used or kept for the purposes aforesaid may be found in any place, to seize and take such cards, tables, checks, balls, wheels, or gambling devices, and convey the same before some judge or justice of the peace of the county in which the same may be found; and it shall be the duty of such judge or justice of the peace to inquire of such witnesses as he shall summon to appear before him in that behalf, touching the nature of such gambling devices, and if such judge or justice shall ascertain that the same are used or kept for the purpose of gambling or playing at any game or games of chance, it shall be his duty to destroy the same. It shall be lawful for officers in executing the duties imposed upon them by this section to break open doors for the purpose of obtaining possession of any such gambling devices; and all persons having possession of any of the articles aforesaid shall be conveyed before some judge or justice of the peace of the county in which they may be found, and held or committed for appearance at the next term of the district court to answer to any indictment or information which may be preferred against them or any of them."

Soon after the defendant was apprehended, the venue of the case was changed to the district court of Park county, where all subsequent proceedings occurred.

The defendant moved to quash all of the counts of the information, and the court sustained the motion as to the first

two counts, and overruled it as to the last two.  Thereupon the defendant was arraigned and plead not guilty to the counts in the information remaining after the first two were quashed, and, upon a trial before a jury, was convicted and, by the court, sentenced to imprisonment in the county jail for six months, and his office declared vacant.  He prosecutes his writ of error to that judgment and sentence.

Messrs. PATTERSON, RICHARDSON & HAWKINS, for plaintiff in error.

THE ATTORNEY GENERAL and Mr. CALVIN E. REED, Mr. J. W. TAYLOR and Mr. A. P. RITTENHOUSE, of counsel, for the People.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

That the defendant corruptly received money for omitting to perform this official duty, if such it was, the record leaves no room for doubt.  But he contends, *inter alia*, that the statute imposing this duty is unconstitutional.

A number of errors have been assigned, but only those will be considered which have been argued by counsel.  They are, *first*, that the judgment was pronounced upon counts of the information which had been quashed; *second*, that the defendant was convicted under an unconstitutional statute; *third*, that there was a variance between the evidence and the information; *fourth*, that the offense, if any, was instigated and procured to be committed by the prosecuting witness; *fifth*, that there was error in certain instructions.

(1) The verdict of the jury was in these words: " We, the jury, find defendant guilty, as charged in the first and second counts of the information."  The contention of counsel for plaintiff in error is that this verdict is absolutely void and of no effect, because it finds the defendant guilty under the two counts of the information that were quashed.  If the record accompanying this verdict were not considered, the argument might be plausible.  The four counts in the information

were not numbered 1, 2, 3, and 4, though they were separately set forth. When the two coming first (which appropriately might be designated counts No. 1 and No. 2) were quashed, there were but two remaining, and the information then stood as though it had always contained but these two, which, as related to each other and to the information, were as 1 and 2. The defendant pleaded not guilty to them after the court disposed of the motion to quash, and in its instructions to the jury the court referred to these counts as No. 1 and No. 2, and in connection therewith stated what they respectively charged against the defendant. In this view neither the court nor the counsel nor the jury was misled, and no prejudice could possibly result to the defendant.

(2) The variance alleged is that whereas the charge was that the defendant corruptly agreed to omit to seize and take before a judicial officer gambling devices, the proof, at most, showed nothing but a vague understanding between the defendant and the gamblers from whom the money was received that he, the defendant, was not to close the gambling houses.

The distinction which counsel endeavor to make is too unsubstantial and refined for courts to recognize in the administration of the criminal law. It is not to be expected that an arrangement of the sort which the sheriff undoubtedly made with the gamblers would be explicit as to details, or reduced to writing. The understanding necessarily would be somewhat general in its nature; and from the facts in evidence in this case we consider that there is no material variance between the allegation and the proof and think the fair inference, which the jury was entitled to draw, was this agreement contemplated that the sheriff was to omit to perform those acts which reasonably or necessarily would tend to close the gambling houses, or to interfere with the carrying on of gambling. To seize these gambling devices was one effective and statutory way to close the houses, and we have no doubt from the evidence that the sheriff's corrupt

agreement included his omission to do the very thing charged, and that the jury were abundantly justified in so finding.

(3) An attempt is made to bring this case within the doctrine of *Conner v. The People*, 18 Colo. 373, and *Saunders v. The People*, 38 Mich. 218, wherein it was held that the crime of larceny was not committed where the taking was instigated or suggested to the defendant by the owner, or agent of the owner, of the property, for the reason that non-consent of the owner must be shown ; in which cases it was also announced that courts should not give their sanction to the prosecution of persons who committed the acts charged against them at the instigation of others, although the object thereof was to effect their arrest while the act was being committed and to capture old offenders.

Counsel here seek to extend this doctrine to a crime in the nature of bribery, where the object of the bribe giver was to gain some advantage for himself and to hold over the sheriff, as a club, this receipt of money, in case he should thereafter attempt to interfere with the former's unlawful practices. We think this cannot be done. To constitute bribery, the act of at least two persons is essential,—that of him who gives and him who receives. The minds of the two must concur ; and, as to the point now before us, it is immaterial whether the giver makes the first advances or gives the money to get some personal advantage to himself. In fact, in most, if not all, of the cases the very object of the giving of a bribe is to obtain for the giver, or the one for whom he is acting, some supposed advantage or gain for himself.

(4) No useful purpose would be subserved in discussing the instructions. We have carefully examined the evidence and the instructions given by the court and those refused which defendant submitted, and find that the court's rulings thereon were substantially correct. The point made that defendant did not, at the time he received the money, know of the existence of this particular statute, counsel admit would be no defense under an indictment for failure to do

the thing required; but where the charge is receiving money for an agreement to omit to perform that duty, evidence by the defendant of his ignorance of this statute is material as tending to sustain his claim that he never made an agreement not to perform the duty imposed by the statute. An instruction asked by defendant covered this theory and was refused. This ruling was not, under the facts, erroneous. While defendant may not have known of this specific statute, he is conclusively presumed to know that gambling is a crime, and the record shows that he did know it, and, in general, that his official duty was to execute the laws against gambling. His transaction with the gamblers is conclusive that he knew what his duty was in this respect. Certainly he knew that gambling was unlawful, and that the gamblers would not give him money to prevent interference with their practices unless it was within his power, and a part of his duty, to do the things which this statute declares he shall do.

(5) But the principal question in this case, and by far the most important one, is as to the validity of section 1343, which prescribes the duty of the sheriff. If the prosecution rests solely upon this section, the force of the objection urged against it is perceived when it is conceded that, unless it was the official duty of the sheriff thereunder to seize and take before a judicial officer these gambling devices, he was guilty of no offense under section 1302.

In passing upon the acts of a coördinate department of government, courts always shrink from the exercise of their unquestioned power to declare such acts in violation of the fundamental law, and enter upon such a consideration with reluctance and hesitation. In all cases of doubt, the presumption in favor of the constitutionality of an act is indulged. Cooley on Constitutional Limitations, chap. 7, p. 192, *et seq.* With respect to the defendant we observe that one occupying the important office of sheriff, so weak or corrupt as the defendant confessedly is, who unblushingly receives money for omitting to perform his official duty, though

entitled to the full protection of the law of the land when prosecuted for his misconduct, does not specially commend himself to any court as one in whose behalf it should give a strained construction of a statute.

This section is said to be unconstitutional, because, by an arbitrary edict of a judicial officer, private property, not a nuisance *per se*, may be taken and destroyed without any notice to its owner, and without giving him his day in court, or an opportunity to be heard upon the question whether it has been used for an unlawful purpose, which use only justifies its forfeiture and destruction; hence, would violate the fourteenth amendment of the federal, and section 25 of article 2 of the state, constitution. As authorities for this contention, the plaintiff in error cites the following: *Lowry v. Rainwater*, 70 Mo. 152; *Craig v. Kline*, 65 Pa. St. 399; *Lawton v. Steele*, 119 N. Y. 226; *People v. Copely*, 4 Crim. Law Mag. 187; *State v. Robbins*, 124 Ind. 308; *Chauvin v. Valiton*, 8 Mont. 451; *Brown v. City of Denver*, 7 Colo. 305; *State v. Snow*, 3 R. I. 64; *Greene v. James*, 2 Curtis, 187; *Wynehamer v. The People*, 13 N. Y. 378; *Phelps v. Racey*, 60 N. Y. 10; *Poppen v. Holmes*, 44 Ill. 360; *Burdett v. Allen*, 35 W. Va. 347; *Windsor v. McVeigh*, 93 U. S. 274; *Ieck v. Anderson*, 57 Cal. 251; 8 Am. & Eng. Ency. of Law, 1081; Cooley's Const. Lim., chap. 16; *Loesch v. Koehler*, 41 N. E. Rep. (Ind.) 326.

In the case last cited the petition for rehearing, pending when the opinion, as above, was published, was overruled, and the opinion reported in 43 N. E. Rep. 129.

The defendant in error cites the following: *Attorney General v. Justices, etc.*, 103 Mass. 456; *Commonwealth v. Gaming Implements*, 119 Mass. 332; *Weller v. Snover*, 42 N. J. Law, 341; *Shivers v. Newton*, 45 N. J. Law, 469; *Campau v. Langley*, 39 Mich. 451; s. c., 33 Am. Rep. 414; *New Orleans, etc., R. R. Co. v. Hemphill*, 35 Miss. 1; *Davidson v. New Orleans*, 96 U. S. 97; *Mugler v. Kansas*, 123 U. S. 623; Waples' Proceedings in Rem, secs. 23, 24, 65, 68, 72, 110, 140, 231, 238.

The cases upon which plaintiff in error mainly relies are *Lowry v. Rainwater* and *State v. Robbins, supra.* Their weight, as authority, is much weakened by the disapproval of their doctrine expressed by the supreme court of the United States in its affirmance of the decision of the court of appeals of New York in *Lawton v. Steele, supra* (152 U. S. 133). The reasoning of that august tribunal would seem to be against the position sought to be maintained by plaintiff in error here.

However that may be, in our opinion this question is not properly in this case. Before stating the reasons for our conclusions, we refer to one contention so persistently urged by the attorney general, which is, even if the statute in the particular noted is unconstitutional, the defendant cannot set up its invalidity, because, by receiving money for omitting to enforce it, thereby recognizing its validity, he is estopped to allege the contrary, when prosecuted for its violation.

In cases of embezzlement it has been held that it is no defense that the principal had no title to the money or thing embezzled, and in a late case (*State v. O'Brien*, 94 Tenn. 79; 26 L. R. 252) this doctrine of estoppel has been expressly held to extend to criminal cases. See, also, 2 Bishop on Crim. Law, sec. 367; 1 Wharton on Crim. Law (9th ed.), sec. 1038.

Whether, upon principle, this doctrine is applicable to the case at bar, we need not determine, for the decision may be placed upon what we regard safer grounds, which we now proceed to consider.

While the specific objection goes only to that provision of the section authorizing the judicial officer to destroy the property, and not to the seizure thereof by the sheriff, or the proceeding before the examining magistrate against the person in whose possession the property is found, it is said that the two latter provisions are so interwoven with the former that, if it is inoperative, they fall with it. Particularly is this said to apply to the seizure of the property.

If the different provisions of a statute, or a single section,

are so connected as that one cannot be enforced without support from the others, all fail; but the rule is familiar, as stated by Judge Cooley: " If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent wholly independent of that which was rejected, it must be sustained." Cooley's Const. Lim. (5th ed.) 212. See, also, *Tripp v. Overocker*, 7 Colo. 72; *Commissioners v. Owen*, 7 Colo. 467; *People v. Jobs*, 7 Colo. 475; *In re Canal Certificates*, 19 Colo. 63–70.

This section has in view at least two distinct and separate objects: (1) the destruction of gambling devices; (2) the prosecution and punishment of their guilty owner or user. To these may be added a third: the seizure of such implements. In the last analysis it is true that the one general object of the entire act against gambling, consisting of several sections, is the protection of public morality; but there are subsidiary objects contemplated by the different sections of the act.

We cannot agree with counsel that the main object of this section is the destruction of gambling devices. While its ultimate object may be to prevent gambling, to this end the punishment of the person unlawfully in possession of, or using, gambling devices contributes quite as effectually as does the destruction of the implements themselves. In the eye of the law, both are a means to the same end, each equally potential. One object is accomplished by means of a proceeding in the nature of a proceeding *in rem*, civil in character; the other under a criminal prosecution. Neither depends, or is contingent, upon the other. The one proceeding may fail; the other succeed. One clause prescribes the duty of an executive officer; the other that of a judge or justice of the peace. It is clear that the provisions of this section do not depend one upon the other.

Were we, therefore, to concede, which we do not, that the second subdivision of the section, relating to the destruction of the property, is invalid, it is clear that the first and third,

relating to seizure of the gambling implements and to proceedings against the person, are independent and distinct provisions, both of which, if otherwise constitutional, may be enforced in accordance with the apparent legislative intent, altogether without reference to the clause providing for destruction. Except as involved in, or as incidental to, the main objection argued, there is no contention here that the seizure would be " unreasonable " under section 7 of article 2 of our constitution, but, if there were we think that section does not prohibit the legislature from authorizing an executive officer, who sees or knows that a crime is being perpetrated, to seize and take into his possession the things with which it is being committed.

But we are here met by this argument: Inasmuch as the general assembly provided that the gambling devices seized should be brought before a justice of the peace and by him destroyed, it would not have authorized a seizure had it supposed the latter provision would be inoperative, and, therefore, the seizure clause must also fail. In answer to this argument we reply: Neither the sole object of the seizure under the statute, nor (as we think) the chief object, was that the property might be destroyed. Equally as important a purpose would be subserved by its production at the trial of the guilty owner, there to be used as evidence against him.

We must give to this statute a reasonable construction, and presume that the sheriff will perform with equal impartiality his duty to seize the implements and his duty to take before the examining magistrate the person having possession of them. We so construe the section in this respect as to require the sheriff to take before the same magistrate the seized devices and their owner or user. In this view the clause directing the seizure of the implements is, and should be, enforceable without regard to the clause authorizing their destruction. Indeed, were this statute not in existence, it would be, as we have already intimated, the official duty of the sheriff, when he knows or sees that a criminal offense is being committed, without warrant, and upon view, to arrest

the offender and to seize and take into custody the subject of the crime, or the thing which aids the offender in its commission, and bring before an examining magistrate, there to be proceeded against according to law, not only the person arrested, but also the things seized. 1 Bishop on Crim. Procedure, sec. 210, *et seq.*; *State v. Robbins, supra*; 2 Hale P. C., 90; 1 East P. C., 307; 2 Hawk. Ch., 1337; Cro. Eliz., 654.

This common law right and power, being thus reinforced by the provisions of the statute, make manifest the duty of the sheriff to seize gambling devices and bring them, with their owner, before the same magistrate. That this statute also directs that the judicial officer may destroy the property, does not invalidate the provision concerning the seizure, even if the former direction is inoperative, for the reasons already stated.

But in another view, the sheriff is not in a position to question the validity of the act so far as it prescribes the duty of the judicial officer. As we understand the rule, no person can attack the constitutionality of a statute whose right it does not affect, and who, therefore, has no interest in defeating it. Cooley's Const. Lim. (5th ed.), 197; *Airy v. The People*, 21 Colo. 144.

Expressed differently, it is, we think, a fair deduction from the authorities that, in advance of a determination by a court of competent jurisdiction, a ministerial or executive officer cannot, for himself, pass upon the constitutionality of a statute, except in so far as it directly prescribes his official duties, or confers some power, or imposes some liability upon him, or prescribes the range of his official conduct. When called upon to act, the sheriff might properly determine for himself the constitutionality of that provision directing him to seize gambling devices, and the judicial officer, in a proper case, may raise the constitutional objection to that clause relating to his office.

Let us apply these principles to this case: In seizing this property the sheriff incurs no liability for any subsequent destruction thereof by the judicial officer. He takes no part in the proceeding prescribed for the latter. He has no inter-

est in it.  It prescribes no duty for him, nor does it relate to his official conduct.  The act of the justice in no wise affects the sheriff, and if the former unlawfully destroys the property, he, and not the sheriff, is responsible to the owner. The owner may, or may not, attack the constitutionality of the section purporting to give to the magistrate power to destroy; but certainly the sheriff may not raise that question to relieve himself of the duty to seize.

A case very much in point as to this feature, as well as upon several other phases of the case at bar, is *Gilchrist v. Schmidling*, 12 Kan. 263.  The court had before it an ordinance prohibiting the running at large of animals in the night-time.  It directed the marshal to take up and impound any animal found running at large contrary to the provisions of the ordinance, and, so long as in his possession, to provide necessary sustenance for it.  At any time after the expiration of six days from the date of impounding, the animal was to be sold at public sale upon three days' previous notice of the time and place of sale, and after deducting the costs, expenses and charges allowed by the ordinance, the excess was to be paid into the city treasury; and if called for within ninety days by the owner, and upon proof of his ownership, the excess was to be paid to him; otherwise it was forfeited to the city.  There was a further provision that the owner, at any time before the sale, might regain possession by paying to the marshal his fees and charges incurred up to that time in the taking up and impounding of the animal.

In the case before the court the marshal (Gilchrist) took up and impounded two heifers belonging to Schmidling.  Before the sale the owner demanded possession of the marshal. The latter refused to give over the animals until his fees for taking up and impounding were paid, with which condition the owner refused to comply.  He thereupon replevied the animals, claiming that the ordinance was unconstitutional as depriving him of his property without due process of law. Upon the particular branch of the case last under consideration by us the court says:

"These fees immediately became a lien upon the cattle,

and can only be discharged by payment; and the owner has no right to the possession of his cattle until he makes this payment, and discharges this lien. This is as far as the case goes, and this far the law and the ordinance must be valid beyond all doubt. No sale was attempted to be made in this case, and no fees were charged except for taking up and impounding the cattle. Whether the officers could have made a valid sale of the cattle, if they had not been replevied, it is not necessary now to determine; but yet we think' they could."

Further in the case the court says:

"But we need not speculate as to what would be a valid sale. All we need decide here is, whether the ordinance authorizing the city officers to take up and impound cattle running at large in the nighttime, and making the fees for taking them up and impounding them a lien on the cattle, and giving the officers the right to the possession of the cattle until the said fees are paid, is valid. We decide this question in the affirmative."

So in the case at bar, the section of the statute under consideration consists of separate and distinct parts, each of which may be a step in the general procedure. In so far as the statute authorizes the seizure of this property, it is unquestionably valid, and this is the part that concerns the duty of the sheriff. Whether the power of the judicial officer to destroy is constitutional, arises when the question is raised by an owner whose property has been destroyed, but we need not determine it now, for it is not involved in the disposition of this case. The foregoing decision is clearly authority for the conclusion we have reached as to the last proposition, and also that the provisions of the statute are separable and distinct.

Upon the whole case we are satisfied that the rulings of the court were correct, that the defendant, after a fair trial, was shown to be clearly guilty of the crime charged against him, and that the judgment should, therefore, be affirmed, and it is so ordered.

*Affirmed.*