INHABITANTS OF WATERTOWN *vs.* EMERY M. MAYO.

The legislature, in the exercise of its police power, may prohibit the use of any building in cities or towns of a certain population, for carrying on, without permission of the mayor and aldermen or the selectmen, a trade necessary and lawful in itself, but which in its ordinary exercise may become a public nuisance.

The St. of 1871, *c.* 167, § 1, prohibiting the use of any building, not then so used, in any city or town of more than four thousand inhabitants, for carrying on, without permission of the mayor and aldermen or the selectmen, "the business of slaughtering cattle, sheep or other animals, or for melting or rendering establishments, or for other noxious and offensive trades or occupations," is a constitutional exercise of the police power of the legislature.

The selectmen have authority to bring suit in behalf of the inhabitants of a town where a building is used for a noxious trade in violation of the St. of 1871, *c.* 167, § 1, to prevent its use in that manner by an injunction under § 3.

BILL IN EQUITY, filed by the selectmen in behalf of the inhabitants of Watertown, on October 14, 1871, to restrain Emery M. Mayo by injunction from occupying and using a building, described in the bill, owned by him in Watertown, for carrying on therein the business of slaughtering cattle, sheep or other animals, without written consent of the selectmen under the St. of 1871, *c.* 167, entitled "An act concerning slaughter-houses and noxious and offensive trades," which was passed on April 8, 1871, and is printed in the margin.* The answer denied that the

———

* "SECTION 1. Whoever in any city or town, containing more than four thousand inhabitants, erects, occupies or uses any building for carrying on therein the business of slaughtering cattle, sheep or other animals, or for melting or rendering establishments, or for other noxious or offensive trades and occupations, or permits or allows said trades or occupations to be carried on upon premises owned or occupied by him or them, without first obtaining the written consent and permission of the mayor and aldermen or selectmen of such city or town, shall forfeit a sum not exceeding two hundred dollars for every month he or they so occupy or use such building or premises, and in like

plaintiffs had any right to bring the suit, either for themselves or in behalf of the inhabitants of Watertown, or such an interest in the subject matter as to authorize them to maintain it; admitted that the defendant was the owner of the building and was carrying on therein the business of slaughtering cattle, sheep and other animals; alleged that he had done so for years previous to the

proportion for a longer or shorter time: provided, that the terms of this section shall not apply to any building or premises now occupied or used for the trades or occupations before described; but no person or persons or corporation, now occupying or using any building or premises for the trades or occupations aforesaid, shall enlarge or extend the same without first obtaining the written consent and permission of the mayor and aldermen or selectmen of the city or town in which such building or premises are situated, in the manner provided in this section.

" SECTION 2. Whenever in any city or town, containing more than four thousand inhabitants, any building or premises are occupied or used by any person or persons or corporation for carrying on the business of slaughtering cattle, sheep or other animals, or for melting or rendering establishments, or for other noxious or offensive trades, the state board of health may, if in their judgment the public health or the public comfort and convenience shall require, order any person or persons or corporation, carrying on said trades or occupations, to desist and cease from further carrying on said trades or occupations in such building or premises; and any person or persons or corporation continuing to occupy or use such building or premises for carrying on said trades or occupations after being ordered to desist and cease therefrom by said board shall forfeit a sum not exceeding two hundred dollars for every month he or they continue to occupy and use such building or premises for carrying on said trades or occupations after being ordered to desist and cease therefrom by said board as aforesaid, and in like proportion for a longer or shorter time : provided that, on any application to said board to exercise the powers in this section conferred upon them, a time and place for hearing the parties shall be assigned by said board and due notice thereof given to the party against whom the application is made, and the order herein before provided shall only be issued after such notice and hearing.

" SECTION 3. The supreme judicial court, or any one of the justices thereof, in term time or vacation, shall have power to issue an injunction to prevent the erection, occupancy, use, enlargement or extension of any building or premises occupied or used for the trades or occupations aforesaid without the written consent and permission provided in section one of this act being first obtained; and also in like manner to enforce the orders of the state board of health issued under section two of this act."

filing of the bill; and further alleged that the business was at no time a public or private nuisance, or noxious or hurtful to the inhabitants of Watertown or to any person; that the defendant had a right to carry on and continue the business; that he was not required to obtain the written consent or permission of the selectmen; and that, so far as his rights were concerned, the St. of 1871, *c.* 167, is unconstitutional and void. The plaintiffs filed a general replication.

At the hearing, before *Wells*, J., it appeared that in September 1871 the defendant made additions to the building, and began therein the business of slaughtering cattle, sheep and other animals. There was conflicting evidence whether he had previously slaughtered animals on the premises, but the judge found as a fact, that at the time the statute took effect the premises were not occupied or used for carrying on therein the business of slaughtering cattle, sheep or other animals. It also appeared that the premises were in the immediate vicinity of several dwelling-houses occupied as such; and that the noise and bleating of the animals on the premises was heard in them; but no other evidence was offered to show that the defendant's business was a public or private nuisance.

It was admitted that both before and ever since the passage of the statute Watertown contained more than four thousand inhabitants; but it did not appear that the selectmen had special authority by any vote of the inhabitants to file or maintain the bill in their behalf.

The judge ordered and decreed that a perpetual injunction be granted against the defendant, as prayed for; and the defendant appealed.

*G. A. Somerby*, for the defendant.

*J. B. Goodrich*, (*H. J. Edwards* with him,) for the plaintiffs.

COLT, J. The business which the defendant carries on in his slaughter-house, without the written consent and permission of the selectmen of Watertown, is in plain violation of the provisions of the St. 1871, *c.* 167, which prohibit the use of any building for slaughtering cattle, &c., or for other noxious or offensive trades, without such consent, in any city or town con-

taining more than four thousand inhabitants. It is found that the defendant's business was commenced since the passage of the act; and it therefore does not come within the protection of the proviso in the first section, in favor of buildings and premises previously occupied for such business. The defendant relies upon the invalidity of the statute on constitutional grounds; and denies that the selectmen of Watertown have any interest in the subject matter, or any right, in behalf of themselves or of the inhabitants of that town, to bring this suit.

All rights to the use and enjoyment of property, secured by the Constitutions of the United States or of this Commonwealth, are subject to regulation under that power known as the police power of the state, which, like the power of taxation, is necessary to its existence, and which is implied in the idea of free civil government. It is defined by Blackstone to be that power which concerns " the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations." 4 Bl. Com. 162. It has its foundation in that maxim of all well ordered society, which requires every one to use his own so as not to injure the equal enjoyments of others having equal rights of property.

Laws passed in the legitimate exercise of this power are not obnoxious to constitutional provisions, although in some measure interfering with private rights, merely because they do not provide compensation to the individual whose liberty is restrained. He is presumed to be rewarded by the common benefits secured. It differs from the right of eminent domain; which involves the appropriation of private property to public use, and requires, in its lawful exercise, pecuniary compensation for the loss inflicted on the owner. Familiar instances of its exercise are found in all quarantine and fire regulations; and it has been repeatedly recognized and variously applied in the decisions of this court. *Commonwealth* v. *Alger,* 7 Cush. 53. *Fisher* v. *McGirr,* 1 Gray, 1. *Commonwealth* v. *Tewksbury,* 11 Met. 55. *Baker* v. *Boston,* 12 Pick. 184. *Vandine, petitioner,* 6 Pick. 187.

To a great extent the legislature is the proper judge of the necessity for the exercise of this restraining power. It is not easy to prescribe its limit. The law will not allow rights of property to be invaded under the guise of a police regulation for the preservation of health or protection against a threatened nuisance ; and when it appears that such is not the real object and purpose of the regulation, courts will interfere to protect the rights of the citizen. But a perversion of this power is not shown by the fact that the business restrained is a necessary and lawful business, which has not yet become a public nuisance in fact, or been declared to be such by the statute. The law most wisely interferes for the protection of the public by preventing in advance threatened and probable injury. Exposure to danger is itself an injury.

Nor as a police regulation is it essential that its provisions should be applicable to all parts of the Commonwealth. Density of population is itself an element which may increase the danger to be provided against, and which in any locality may justify the interference of the legislature and relieve it from the objection that its action is partial and unequal. The same rule is provided for all, to be applied only where from the surrounding circumstances there is the same exposure. *Commonwealth* v. *Alger*, 7 Cush. 53. *Baker* v. *Boston*, 12 Pick. 184. *Austin* v. *Murray*, 16 Pick. 121. *Coates* v. *New York*, 7 Cowen, 585, 604.

There is nothing in the declared purposes and provisions of the statute in question, which leads us to doubt that it comes within the constitutional exercise of the legislative power. It appears to us to provide, by legal modes, through the agency of local authorities, for a prudent restraint upon a use of property which from its nature may become injurious.

The remaining objection goes to the right of the selectmen, for themselves or in behalf of the Inhabitants of Watertown, to maintain this bill. This objection, as stated in the answer, does not go to the authority in fact of the selectmen to represent the town in this matter, but denies the right of either the selectmen or the town to maintain a bill of this character.

But the right of the inhabitants of a town, in a case like this, to apply to this court for relief, and to prosecute the suit as plaintiffs, was recognized in the recent case of *Winthrop* v. *Farrar*, 11 Allen, 398. In that case, the selectmen of a town, acting as a board of health, brought a bill in equity to restrain the exercise of an offensive trade which they had prohibited under the Gen. Sts. *c.* 26, and an amendment was allowed substituting the inhabitants of the town as plaintiffs after the term of office of the selectmen had ceased.

The St. of 1871, *c.* 167, and the Gen. Sts. *c.* 26, relate to the same subject matter, the restraint of offensive trades. Power is given to the court under the later statute, in § 3, to prevent by injunction the erection, use or enlargement of buildings in violation of its provisions; and in the absence of any positive provision, it is to be presumed that it was not the intention to take from towns the power which they had exercised, by the decision of this court, to prosecute suits in similar cases.

*Decree affirmed.*