JASON F. CHASE *vs.* PROPRIETORS OF THE REVERE HOUSE
& others.

Suffolk.    December 2, 1918. — February 1, 1919.

Present: RUGG,. C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Nuisance. Prostitution. Evidence,* Presumptions and burden of proof. *Constitutional Law,* Police power, Jury trial, Due process of law. *Equity Jurisdiction,* To abate nuisance under St. 1914, c. 624, § 1.

In a suit in equity under the provisions of St. 1914, c. 624, to abate a nuisance consisting of a building used for prostitution, assignation or lewdness, the rule as to burden of proof which the plaintiff must satisfy is that applying in civil suits, which requires him to establish the allegations of his bill by a fair preponderance of the evidence only.

Under the provisions of § 1 of the statute above described, "Every building, part of a building, tenement or place used for prostitution, assignation or lewdness, and every place within which or upon which acts of prostitution, as-·signation or lewdness are held or occur, shall be deemed a nuisance," it is the use to which the building is put that determines its status and not its structural or commercial or domestic character.

An ordinary hotel used primarily for the accommodation of guests and strangers and operated under an innholder's license duly issued, if it is shown to be used for prostitution, assignation or lewdness, must be deemed a nuisance and becomes subject to the abatement and proceedings in equity provided by St. 1914, c. 624.

While it is true that a single act of illicit intercourse upon premises used as a hotel may of itself be insufficient to establish the existence of the nuisance described · in St. 1914, c. 624, § 1, the existence of such a nuisance is a question of fact on all the evidence, including the "general reputation of the place," which is made admissible as evidence by § 6 of the statute.

The responsibility under the provisions of St. 1914, c. 624, of the owner and of the lessee of premises used for hotel purposes for the existence there of the nuisance described in § 1 of the statute is not affected by the fact that neither they nor either of them knew of the facts giving rise to such nuisance.

St. 1914, c. 624, § 1, enacting that "Every building, part of a building, tenement or place used for prostitution, assignation·or lewdness, and every place within which or upon which acts of prostitution, assignation or lewdness are held or occur, shall be deemed a nuisance" and providing means for the abatement of such nuisance, is constitutional, being a proper exercise of police power and not a violation of art. 12 of the Declaration of Rights or of the Fourteenth Amendment to the Constitution of the United States.

Article 15 of the Declaration of Rights does not require that either the owner or the lessee of premises upon which there is a nuisance as described in St. 1914, c. 624, § 1, shall have a right to a trial by jury of issues involved in a suit in equity brought against him under the provisions of the statute.

BILL IN EQUITY under St. 1914, c. 624, filed in the Superior Court on December 6, 1917, and afterwards amended, by a citizen of Boston against the Proprietors of the Revere House, a corporation, the owner, and Rodney S. Harrison, the lessee, of the Revere House in Boston, alleging that the premises had been used for prostitution, assignation and lewdness and seeking the relief by injunction and sale provided by the statute.

The defendants moved that issues be framed for trial by a jury. The motion was heard by *J. F. Brown,* J., and was denied.

The suit then was heard by the same judge upon the merits. The hearings lasted ten days and no further evidence remained to be submitted by either side. "A large amount of evidence was offered by the respective parties and was received on the question whether or not the hotel had been used in violation of the provisions of St. 1914, c. 624, § 1. The plaintiff argued that this evidence showed that the hotel was a nuisance as defined in this section and the defendants contended to the contrary. This is the only controverted issue of fact in the case."

The defendants made a number of requests for rulings, described in the opinion, raising the questions, also there described, as to the constitutionality and construction of the statute. All these rulings were denied and the defendants excepted.

The judge then reported the case to this court for determination, stating, "All the evidence has been received and I am ready to make a finding upon the above mentioned controverted issue of fact, and should do so now, if it were not my opinion that the interlocutory order denying the defendants a jury trial and the requests for rulings above set out so affect the merits of the controversy that these matters ought before further proceedings to be determined by the full court. . . .

"I am also of the opinion that, under the circumstances of this particular case, the ends of justice as well as the public interest require a determination by the full court of these matters before a finding of fact is made by me upon the question whether the premises were used contrary to the provisions of St. 1914, c. 624, § 1. It appeared in evidence that owing to the large number of soldiers and sailors belonging to the army and navy of the United States now frequenting the city of Boston there is a great, special and necessary public concern respecting the prevalence of prostitu-

tion; that the restriction of this evil in hotels and cafés is a matter of great difficulty but is a thing very necessary to accomplish, if possible, in the public interest generally and particularly in the interest of the army and navy at the present time; and that statute, if constitutional and applicable, indicates a way of reaching this evil as it exists in hotels and cafés more effective than that afforded by the provisions of R. L. c. 101. It is important, therefore, that the true construction and validity of this act should be determined by the Supreme Judicial Court at the earliest opportunity.

"Such opportunity would, in an ordinary case, be furnished without injustice to either party if I completed my findings of fact and then either entered a decree for the plaintiff or the defendants as the case might be, or without such decree reported the case on the pleadings, findings and rulings to the full court; but in this particular case, if I adopt either of these courses and if in doing so I should find as a fact that the premises had been used for the purpose prohibited by § 1 of the act, and then the full court should determine that the act was either not constitutional or not applicable, or that there had been error in any rulings of law, the defendants would sustain unjustly a great and irreparable damage.

"I am of the opinion that this is one of those cases where in order to prevent injustice a court of equity should report the case to the full court without making all the findings of fact which in an ordinary case would be proper. I am also of the opinion that no time will be lost in thus reporting the case.

"For the foregoing reasons I report the case to the Supreme Judicial Court upon the bill of complaint, stipulations of the parties, the answer of the defendant corporation, the answer of the defendant Harrison, the plaintiff's replication; the interlocutory refusal or order denying the defendants the privilege of a jury trial and the defendant's exception thereto; the defendants' requests for rulings of law, my refusal to make the same, and their exceptions to this action. . . . If the full court determines that the act of 1914 is constitutional and applicable, and that the defendants are not entitled to a jury trial and settles the question of the degree of proof required, my findings of fact are to be completed in accordance with the opinion of the full court on the other questions of law raised by the requests for rulings, without

further hearings or proceedings of any kind, and I am at once to order a final decree. If the full court determines that the act is constitutional and applicable but that the defendants are entitled to a jury trial, issues are to be framed for a jury and the cause is to proceed as usual in such cases. If the full court should determine that the act is not applicable or not constitutional, a final decree is to be entered for the defendants; and the same action is to be taken as to the defendant corporation if the court holds that any of the separate rulings requested by it other than that relating to the degree of proof should have been given."

*J. W. Rorke,* for the plaintiff.

*F. W. Fosdick,* for the defendant Harrison.

No counsel appeared for the Proprietors of the Revere House.

*N. Matthews & P. Nichols,* by leave of court filed a brief on behalf of persons in like interest.

BRALEY, J. The presiding judge, after hearing the parties at great length, came to no conclusion on the merits but reported for our determination the questions of law appearing in the record, with the reservation, that if his rulings were correct and the bill can be maintained, "my findings of fact are to be completed in accordance with the opinion of the full court . . . without further hearings or proceedings of any kind, and I am at once to order a final decree."

The material question is, whether the St. of 1914, c. 624, entitled "An Act to provide for abating places of prostitution and certain other nuisances," is constitutional. The first section declares that "Every building, part of a building, tenement or place used for prostitution, assignation or lewdness, and every place within which or upon which acts of prostitution, assignation or lewdness are held or occur, shall be deemed a nuisance," and under § 2 "Whoever keeps or maintains such a nuisance shall be punished by a fine of not less than one hundred nor more than one thousand dollars, and by imprisonment for not less than three months nor more than three years." While at common law gambling was not unlawful, *The Queen* v. *Ashton,* 1 El. & Bl. 286, common gaming houses as well as bawdy houses were nuisances. *Commonwealth* v. *Goodall,* 165 Mass. 588. *The King* v. *Dixon,* 10 Mod. 335. And these sections in substance are re-enactments in part of R. L. c. 101, §§ 6, 7, which have been the law of this Common-

wealth since St. 1855, c. 405, §§ 1, 2, the constitutionality of which has been settled by numerous decisions. See among other cases. *Commonwealth* v. *Howe,* 13 Gray, 26; *Commonwealth* v. *Edds,* 14 Gray, 406; *Commonwealth* v. *Lambert,* 12 Allen, 177; *Commonwealth* v. *Warren,* 161 Mass. 281; *Commonwealth* v. *Baldwin,.* 213 Mass. 238. But even if the keeping or maintaining of such a nuisance is made punishable as a crime, the bill is brought under the further provisions of the statute which read as follows:

"Section 3. Whenever there is reason to believe that such a nuisance is kept or maintained or exists in any city or town, either the district attorney for the district in which the nuisance is believed to exist, or the Attorney General, in the name of the Commonwealth, or one or more citizens in his or their own names,. may maintain a bill in equity perpetually to enjoin the person or persons conducting or maintaining the same, and the owner, lessee or agent of the building or place in or upon which such nuisance exists and their assignees from directly or indirectly maintaining or permitting such nuisance.

"Section 4. The bill of complaint shall join the owner of record of the premises as a party respondent and shall be filed in the Superior Court for the county in which the nuisance is believed to exist, and shall be verified by oath of the complainant unless filed by the Attorney General or a district attorney. The bill shall forth-with after filing be presented to the court sitting in equity within the county, or to any judge of the court if the court is not sitting in equity within the county, or in vacation, and the proceeding shall have precedence over all other matters upon the docket except criminal proceedings, election contests and hearing upon petitions for other injunctions.

"Section 5. If upon a hearing, after at least two days' notice to the respondents of the time and place assigned for such hearing, the existence of such a nuisance is shown to the satisfaction of the court or judge, either through verified complaint or through evidence in the form of affidavits, depositions, oral testimony or otherwise, a temporary injunction shall be ordered to issue forthwith restraining the maintenance of the nuisance and enjoin-ing the occupants, owner and all other persons from removing fixtures, furniture, musical instruments and all movable property from the premises until further order of the court.

"Section 6. If, upon subsequent hearing in due course of equity procedure, the existence of the nuisance shall be established, a decree permanently enjoining the maintenance thereof shall be entered, and, as a part of such decree, shall be entered an order of abatement directing the sheriff of the county or his deputy to enter the building or place where the nuisance has been maintained and to sell all furniture, musical instruments and movable property used in conducting and maintaining the nuisance, in the manner provided for the sale of chattels under execution, and to remove the same or cause the same to be immediately removed. If it shall appear that the bill of complaint was filed five or more days after notice to the record owner of the premises, and that the owner did not proceed forthwith to enforce his rights under the provisions of section ten of chapter one hundred and one of the Revised Laws, as amended by section thirteen of this act, such order of abatement shall further direct the effectual closing of the building or place and the prohibition of its use for any purpose for a period of one year, unless sooner released as provided in section eight. For the purpose of proving the existence of the nuisance the general reputation of the place shall be admissible as evidence.

"Section 7. For removing and selling the movable property in accordance with the decree of the court the officer shall be entitled to charge and receive as fees the amounts which he would receive for levying upon and selling like property on execution, and for closing the premises and keeping them closed, a reasonable sum shall be allowed by the court. The proceeds of the sale of the personal property by order of the court shall be applied: first, to the fees and costs of removal and sale; second, to the allowances and costs of so closing and keeping closed the building or place; third, to the payment of the complainant's costs in such proceeding, including a reasonable attorney's fee to be fixed by the court; fourth, the balance, if any, to the owner of the property sold.

"Section 8. If the owner of any such building or place shall appear and pay all costs of the proceeding, and shall file a bond with sureties approved by the clerk in the full value as ascertained by the court, or in vacation by the clerk, conditioned that the owner of the building, part of the building, tenement or place found to be a nuisance will immediately abate such nuisance and prevent the same from being established or kept therein within a period of one

year thereafter, the court or judge may, if satisfied of the owner's good faith, order the premises so closed under the order of abatement to be delivered to the owner of the real estate and the order of abatement to be so modified as to dissolve the order that the building remain closed for one year: provided, however, that such release shall not be held to release such property from any judgment, lien, penalty or liability to which it may be subject by law."

The jurisdiction of a court of equity over the abatement and suppression of a nuisance whether public or private is settled, and may be exercised although the nuisance is made by statute an indictable offence. *Rowe* v. *Granite Bridge Corp.* 21 Pick. 344. *Fall River Iron Works Co.* v. *Old Colony & Fall River Railroad,* 5 Allen, 221. *Cadigan* v. *Brown,* 120 Mass. 493. *State* v. *Ryder,* 126 Minn. 95. *Coosaw Mining Co.* v. *South Carolina,* 144 U. S. 550. *Crowder* v. *Tinkler,* 19 Ves. 617. If the nuisance is detrimental to the public the proceedings may be instituted not only "in the name of the Commonwealth" by the Attorney General, or the district attorney for the district in which the nuisance is alleged to exist, but any citizen, as the statute in question provides, may be authorized by the Legislature to initiate and maintain the suit. *Attorney General* v. *Jamaica Pond Aqueduct Co.* 133 Mass. 361, 363, 364. *Carleton* v. *Rugg,* 149 Mass. 550. The defendants did not demur but answered to the merits, and while the bill does not contain such an allegation, yet if the judge found, as he was warranted in finding, that the notice described in the report had been served on the record owners "five or more days" before the bill was filed, and that notwithstanding the notice the corporation had not taken any steps against the tenant as provided in R. L. c. 101, § 10, as amended by St. 1914, c. 624, § 13, the mandatory provisions as to the decree found in § 6 would become applicable.

The bill having stated a case in accordance with the jurisdictional requirements of the statute, the burden of proof required in civil cases rested on the plaintiff to establish the essential allegations to the satisfaction of the trial court. We shall consider the remaining grounds on which the constitutionality of the statute is assailed in the order of their presentation by counsel.

The argument is strongly pressed that the statute is not applicable to "an ordinary hotel used primarily for the accommodation of guests and strangers and operated under a duly issued inn-

holder's license." And the judge has found that the real estate, title to which under St. 1854, c. 58, is in the defendants, the Proprietors of the Revere House, but who are prohibited by the charter from carrying on "the business of hotel-keeping," had been leased at an annual rental to the defendant Harrison, who owns the furniture and other personal property in the building, and "operates the premises under an innholder's license and a liquor license," duly issued by the public authorities, "as an ordinary hotel for the accommodation of guests and strangers with rooms, food, liquors, cigars, etc." The wording of St. 1914, c. 624, § 1, is in the most comprehensive terms, "Every building, part of a building, tenement or place used for prostitution, assignation or lewdness, and every place within which or upon which acts of prostitution, assignation or lewdness are held or occur, shall be deemed a nuisance." The structural or commercial or domestic character of the building is immaterial. It is the forbidden use when established by evidence to which the building is put, that determines its status whether denominated as a hotel, a tenement, a house, or a place. *Commonwealth* v. *Purcell*, 154 Mass. 388. *Commonwealth* v. *Baker*, 155 Mass. 287. *Commonwealth* v. *Mullen*, 166 Mass. 377. Nor is it of any consequence, that coincidently with the unlawful use the building is also maintained as a hotel. A further contention is, that the bill cannot be maintained upon proof of individual or isolated instances of prostitution, assignation, or lewdness without the introduction of evidence that the premises were thus used more or less constantly or habitually to the knowledge and with the approval of the lessee. We assume that a single act of illicit intercourse may of itself be insufficient to establish responsibility, but whether a nuisance as defined by the statute exists is a question of fact on all the evidence, including the "general reputation of the place" which is made admissible by § 6. *Commonwealth* v. *Lambert*, 12 Allen, 177. *O'Connell* v. *M'Grath*, 14 Allen, 289, 290. *Commonwealth* v. *Warren*, 161 Mass. 281, 282, 283.

The owner who rents, as well as the lessee who occupies the premises, is bound to comply with the law. *Commonwealth* v. *Baker*, 155 Mass. 287. And, if the evidence shows and the judge finds, that the building, place, or any part of it has been so used, it is legally wholly immaterial that the owner did not know of it.

The responsibility of the owner after he has received notice is not based upon his knowledge of what is going on, but upon the fact that the premises are used for a purpose forbidden by the statute. *Commonwealth* v. *New York Central & Hudson River Railroad,* 202 Mass. 394, 396, 397. *Tenement House Department* v. *McDevitt,* 215 N. Y. 160, 167.

The next question is whether §§ 6, 7 and 8 are in violation of art. 12 of the Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States. It may be conceded that neither the real nor personal property enumerated in § 6 comes within the classification of property which is inherently dangerous or offensive to the public health or morality. But the police power includes all necessary measures for the promotion of the good order of the community and the public morals. It embraces the suppression of nuisances whether injurious to the public health, like unwholesome trades, slaughter-houses, and rendering establishments, or to the public morals like gambling-houses, and houses of prostitution and ill fame. *Watertown* v. *Mayo,* 109 Mass. 315. *Commonwealth* v. *Sisson,* 189 Mass. 247. *Crutcher* v. *Kentucky,* 141 U. S. 47. *Lawton* v. *Steele,* 152 U. S. 133. The power to prescribe a limitation carries with it the power to discriminate against one citizen in favor of another, and the unlawful use of such property may be enjoined. It is a judicial proceeding against the property which is being devoted to an unlawful use after notice to the parties interested, and the decree may under the statute include a forfeiture of the personal property which the court finds has been used in connection with, and for the purpose of maintaining the place unlawfully. *Attorney General* v. *Justice of the Municipal Court of Boston,* 103 Mass. 456, 466, 467, 469. *Commonwealth* v. *Gaming Implements,* 119 Mass. 332. *Commonwealth* v. *Intoxicating Liquors,* 163 Mass. 42. See R. L. c. 100, §§ 72, 85; St. 1909, c. 154; R. L. c. 214, § 23; c. 217, §§ 1–8. Provision is made for notice and hearing where the defendant may contest all questions in issue, and no order for abatement can be entered unless the court which has full jurisdiction of the subject matter and of the parties determines that a nuisance exists for which he should be held responsible. The cases of *Salem* v. *Eastern Railroad,* 98 Mass. 431, *Miller* v. *Horton,* 152 Mass. 540, *Stone* v. *Heath,* 179 Mass. 385, reviewed in *North American Cold*

*Storage Co.* v. *Chicago,* 211 U. S. 306, 317, 318, 319, and *Belmont* v. *New England Brick Co.* 190 Mass. 442, and *Stevens* v. *Worcester,* 219 Mass. 128, 131, where the order of condemnation was passed by a board of health, or city council, or a commission on contagious diseases among domestic cattle, without giving the defendant an opportunity to be heard, or to protect his rights, are plainly distinguishable. The statute does not require the destruction of the building. But if it appears that the bill was filed five or more days after notice to the record owner of the premises, during which he has failed to avail himself of his rights to have the lease forfeited under R. L. c. 101, § 10, as amended by St. 1914, c. 624, § 13, the order of abatement "shall further direct the effectual closing of the building or place and the prohibition of its use for any purpose for a period of one year, unless sooner released as provided in section eight." The rights conferred by R. L. c. 101, § 10, as amended are, that if a tenant or occupant of a building or tenement under a lawful title uses such premises or any part thereof for "the purposes of prostitution, assignation, lewdness, . . . such use shall annul and make void the lease or other title under which he holds and, without any act of the owner, shall cause the right of possession to revert and vest in him, and he may, without process of law, make immediate entry upon the premises, or may avail himself of the remedy provided in chapter one hundred and eighty-one," which is the remedy for the recovery of the possession of land by summary process. It was said in *Trask* v. *Wheeler,* 7 Allen, 109, 111, that this provision, then Gen. Sts. c. 87, § 8, is to be regarded as made for the benefit of the landlord who may avail himself of it although he is not required to do so. If the landlord, however, remains indifferent, R. L. c. 101, § 11, formerly Gen. Sts. c. 87, § 9, declares that "Whoever knowingly lets a building or tenement owned by him, or under his control" which is resorted to for prostitution, lewdness or illegal gaming, or for the illegal keeping or sale of intoxicating liquors, "or after due notice of any such use omits to take all reasonable measures to eject therefrom the persons occupying the same as soon as it can lawfully be done, shall be deemed guilty of aiding in the maintenance of such nuisance . . . ," and may be punished by fine and imprisonment. *Commonwealth* v. *Wentworth,* 146 Mass. 36. *Commonwealth* v. *LaPointe,* 228 Mass. 266. See *Sherman* v. *Wilder,* 106 Mass. 537;

*Prescott* v. *Kyle,* 103 Mass. 381; *O'Connell* v. *M'Grath,* 14 Allen, 289; *Healy* v. *Trant,* 15 Gray, 312, 313. And § 6 of the statute in question, in so far as the permanent suppression of a nuisance can be accomplished by civil process, is in accord. While property when thus used is a cause of the public detriment, no restriction is imposed upon its lawful enjoyment but only upon its unlawful use. It also is manifest that the prohibition cannot take effect unless the court is satisfied that the premises constitute a nuisance. It would follow that having no right to use or to permit the premises to be used for such purpose, the owner where he fails to act cannot justly complain if the Legislature thereafter deals with the property in any manner which it deems reasonably necessary for the permanent extinction of the evil in connection with which the property is used. *Watertown* v. *Mayo,* 109 Mass. 315.

The defendant owner, moreover, has only to desist from keeping, or permitting a nuisance to be kept, for under § 8 the closing of the building or place may be avoided if the owner pays the costs, satisfies the court of his good faith and gives a bond with sureties, conditioned that he will immediately abate the nuisance and prevent the same from being established or kept therein within a period of one year thereafter. It cannot be said under these conditions where, as we have said, the owner as well as the lessee is given every opportunity at all stages of the proceedings to protect his property and to assert his rights in a court of justice, that he has been deprived of its legitimate use without due process of law. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523, 530, 531. *Hodge* v. *Muscatine County,* 196 U. S. 276. *Northwestern Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659, 667. *Kennard* v. *Louisiana,* 92 U. S. 480. *McMillen* v. *Anderson,* 95 U. S. 37. The power of the Legislature under c. 1, art. 4, of the Constitution to enact "all manner of wholesome and reasonable . . . statutes . . . for the good and welfare of this Commonwealth," within which the statute in question comes, is settled. *Turner* v. *Nÿe,* 154 Mass. 579, 582. And the exercise of this power is constitutional even if no provision is made for compensation to the owner of the property affected. *Newton* v. *Joyce,* 166 Mass. 83, 84.

But as art. 12 of the Declaration of Rights declares, that ". . . no subject shall be . . . despoiled, or deprived of his property, . . . or deprived of his life, liberty, or estate, but by

the judgment of his peers, or the law of the land," and art. 15, that "In all controversies concerning property . . . except in cases in which it has heretofore been otherways used and practised, the parties have a right to a trial by jury . . . ," it is cogently urged that the defendants as of right are entitled to have the material issues submitted to a jury, and that the refusal of the judge to grant their motion is erroneous. It was said in *Shapira* v. *D'Arcy,* 180 Mass. 377, following *Parker* v. *Simpson,* 180 Mass. 334, "The right of trial by jury guaranteed by our Constitution, does not include a right to such a trial in suits in equity, in which from early times it was understood that there was no such right, and in which it was the practice to proceed without a jury." The jurisdiction of a court of equity over nuisances had been recognized and established before the adoption of our Constitution, and the remedy being purely equitable, whether issues should be framed was not a matter of constitutional right but was within the discretion of the judge. *Carleton* v. *Rugg,* 149 Mass. 550. *Parker* v. *Simpson,* 180 Mass. 334. *Ginn* v. *Almy,* 212 Mass. 486. 2 Story, Eq. Jur. (13th ed.) §§ 921, 923, 925.

We are of opinion for the reasons stated that all of the defendants' requests for rulings and the motion for a jury trial were denied rightly, and the case accordingly is to stand for final disposition by the trial court.

*So ordered.*