# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

---

GEORGE BURROUGHS *vs.* FRANK W. RANE.

Suffolk.   December 1, 2, 1921. — March 3, 1922.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*State Forester.   Public Officer.   Actionable Tort.*

The powers and authority given to the State forester by St. 1905, c. 381, §§ 3, 6, as amended respectively by §§ 1 and 2, of St. 1908, c. 591, were not limited by the provisions of Res. of 1915, cc. 2, 23.

Acting under the powers conferred by the statutes and resolves above described, the State forester directed a deputy in charge as division superintentent of a certain part of the State including the towns of Hamilton and of Topsfield to find the places badly infested with gypsy or brown tail moths, "put at work there those men whom the overseers of the poor of the various towns in [his] . . . division might recommend as worthy, and utilize such labor in the places that most needed attention."   Certain needy persons, selected by the overseers of the poor of the town of Hamilton, were placed under the general supervision of the deputy State forester and under the immediate supervision of the superintendent of moths of the town of Hamilton, a public officer chosen by the selectmen and also subject to the general advice and direction of the State forester.   The deputy set these men at work upon an estate in Topsfield which was heavily infested with gypsy moths, where they cleared away and burned brush, cut down smaller trees and cut up these small trees into cord wood.   The proprietor of the estate paid the State $1 per cord as a fair equivalent for the labor of cutting these trees into cord wood.   The State forester did not visit the work and had no actual knowledge of its details.   While doing the work upon this estate, the men negligently permitted a fire to spread to a neighboring estate in Hamilton, whose owner brought an action of tort against the State forester as an individual.   A judge, who heard the action without a jury, having found the foregoing facts, also found that the work was

solely directed to the suppression of the gypsy moth, that it was not done for the private benefit of the owner of the estate, and that it came within the general scope of the original direction of the defendant to his deputy; and found for the defendant. *Held,* that

(1) A finding was warranted that the work as done by direction of the deputy came within the general scope of the defendant's original directions to his deputy, which in turn were within the powers and authority of the defendant as State forester;

(2) If, in the judgment of the defendant, the clearing away and burning of the infested brush and branches of the trees which had been felled also required cording of the wood, such cording did not exceed his official authority as State forester;

(3) The authority of the defendant not being exceeded by his deputy and the work having been done solely for the public benefit, the defendant was not liable as an individual because he personally did not commit the acts of negligence nor were they done under his personal direction.

TORT for damage to certain timber land and ornamental trees of the plaintiff caused by a fire on adjoining land of one Streeter which negligently was permitted to spread to the plaintiff's land by persons for whose acts the defendant, the State forester, was alleged to be personally responsible. Writ dated June 7, 1916.

The answer of the defendant alleged in substance that the negligence which caused damage to the plaintiff was of certain "worthy and needy persons" employed by him in his capacity as State forester under the authority of Res. of 1915, cc. 2, 23, for the public work of suppressing the gypsy moth nuisance.

There was a hearing by *McLaughlin,* J., without a jury. Among other facts found by him were the following:

"On the day of the fire, and for a week or ten days previous thereto, these men [selected by the overseers of the poor of the town of Hamilton] were at work on the land of the said Streeter in the town of Topsfield, whose estate was adjacent to that of the plaintiff in the town of Hamilton. They were under the immediate direction of a foreman, one Bradstreet, an employee of the town of Hamilton, but were subject to the general direction of Philips, who, as I infer, occasionally visited the place. Philips' superior officer, the State forester, never visited it, and had no personal knowledge, so far as appeared, of the details of the work, or even, so far as the evidence disclosed, knew that this work was in progress on the Streeter place, but I do find that this work came within the general scope of the defendant's original directions and authorization to Philips, his deputy. The

work which the men did was solely directed to the suppression of the gypsy moth. They cleared away and burned brush; cut down the smaller trees of the kinds in which the moths most easily propagate, as, for example, birch, alder and oak, and this was the most practical method of destroying the gypsy moth. The trees when cut down were converted into cord wood, and subsequently Streeter paid into the State treasury the sum of $144, which was deemed a fair equivalent for the value of the labor in cutting the felled trees into cord wood. This payment was at the rate of one dollar per cord.

"There was no evidence of any express agreement between the state or town authorities with Streeter for the performance of this work, but I infer that it was done with his assent, if not at his request. His estate was heavily infested, and was a menace to all the neighboring woodland. It was imperative that the moths on his estate be destroyed if the trees in that section were to be preserved. The work was not done, as I find, for the private benefit of Streeter. The burning of the brush and cutting down of the trees was work of a public nature, done for the sole purpose of suppressing a public nuisance, and the incidental feature of cutting the felled trees into cord wood, did not deprive the work of the public character with which it was originally impressed. The State forester, his deputy Philips, and the local superintendent of moths of the town of Hamilton in doing this work were actuated only by the purpose of performing their duties as public officials, charged with the duty of suppressing the gypsy moth, and none of these officials contemplated or understood that in any sense they were privately employed by Streeter for the purpose of benefiting his property. There was nothing in the evidence which would justify me in finding that they worked under Streeter's directions, or received any orders from him, or compensation of any nature. Whatever benefit Streeter derived from the work was incidental to the general benefit to the public."

Other material facts found by the judge are described in the opinion. He found for the defendant and reported the action to this court for determination, it being agreed by the parties that if a finding by the judge, that the negligent acts causing the fire were within the scope of the men's employment, could not be

sustained, or if his ruling, that the defendant was not legally liable for the fire damage, was right, then judgment should be entered for the defendant; but if his finding, that the men were within the scope of their employment, could be sustained and his ruling of law as to liability was wrong, then judgment should be entered for the plaintiff in the sum of $2,000.

*J. M. Maguire,* for the plaintiff.

*A. E. Seagrave,* Special Assistant Attorney General, for the defendant.

BRALEY, J. A gang of men, while destroying gypsy moths in the adjoining land of one Streeter, kindled a fire to heat coffee for their midday meal, which the judge could find spread through their negligence to the plaintiff's premises destroying his woodland. The question for decision is, whether the defendant, who held the office of State forester created by St. 1904, c. 409, § 1, and ordered the performance of the work, is responsible for their misconduct within the doctrine of *Delory* v. *Blodgett,* 185 Mass. 126, *Oulighan* v. *Butler,* 189 Mass. 287.

By St. 1909, c. 263, § 1, the defendant's duties required him to "act for the Commonwealth in suppressing the gypsy and brown tail moths as public nuisances," and by § 2, which abolished the office of superintendent for suppressing gypsy and brown tail moths, it is declared, that the "State forester shall in all respects and for all purposes be the lawful successor of the superintendent for suppressing gypsy and brown tail moths." It was provided by § 3, of St. 1905, c. 381, as amended by St. 1908, c. 591, § 1, that "The . . . superintendent shall act for the Commonwealth in suppressing said moths as public nuisances, . . . For this purpose he shall establish an office and keep a record of his doings and of his receipts and expenditures. . . . He may employ such clerks, assistants and agents, including expert advisers and inspectors, as he may deem necessary and as shall be approved by the governor. He may make contracts on behalf of the Commonwealth; may act in co-operation with any person, persons, corporation or corporations, including other States, the United States or foreign governments; may conduct investigations and accumulate and distribute information concerning said moths; may devise, use and require all other lawful means of suppressing or preventing said moths; may lease real estate when he deems it

necessary, and, with the approval of the board in charge, may use any real or personal property of the Commonwealth; may at all times enter upon the land of the Commonwealth or of a municipality, corporation, or other owner or owners, and may use all reasonable means in carrying out the purposes of this act." And by § 6 of St. 1905, c. 381, as amended by St. 1908, c. 591, § 2, "The mayor of every city and the selectmen of every town shall, on or before the first day of November in each year, and at such other times as he or they shall see fit, or as the State superintendent may order, cause a notice to be sent to the owner or owners, so far as can be ascertained, of every parcel of land therein which is infested with said moths; or, if such notification appears to be impracticable, then by posting such notice on said parcels of land, requiring that the eggs, caterpillars, pupæ and nests of said moths shall be destroyed within a time specified in the notice. . . . If the owner or owners shall fail to destroy such eggs, caterpillars, pupæ or nests in accordance with the requirements of the said notice, then the city or town, acting by the public officer or board of such city or town designated or appointed as aforesaid, shall, subject to the approval of the said superintendent, destroy the same, and the amount actually expended thereon, not exceeding one half of one per cent of the assessed valuation of said lands, as heretofore specified in this section, shall be assessed upon the said lands; and such an amount in addition as shall be required shall be apportioned between the city or town and the Commonwealth in accordance with the provisions of section four of this act. The amounts to be assessed upon private estates as herein provided shall be assessed and collected, and shall be a lien on said estates, in the same manner and with the same effect as is provided in the case of assessments for street watering. The public officer or board of any city or town designated or appointed as aforesaid, or any agent or employee of such public officer or board, may at any time enter upon any parcel of land within the limits of such city or town for the purpose of determining whether or not such parcel of land is infested with said moths, or the extent to which such parcel of land is so infested."

The powers enumerated gave to the defendant ample authority to suppress and destroy gypsy and brown tail moths wherever

found, which the General Court had determined were "public nuisances," and for this purpose he could direct Philips, his assistant and "division moth superintendent," whose division included the towns of Hamilton and Topsfield where the lands in question are respectively located, to inspect and decide whether moths were prevalent and to destroy them to stay the advance of a universally recognized plague, which would cause the complete destruction of contiguous woodland. *Chase* v. *Proprietors of Revere House,* 232 Mass. 88. *Commonwealth* v. *Sisson,* 189 Mass. 247.

The defendant's statutory authority is not limited by the fact that, before giving these directions, the General Court had passed the following resolve: "That the State forester be directed to provide employment for needy persons deemed by him to be worthy thereof, preference being given to residents of the Commonwealth and to persons who have others dependent upon them for support. The moneys authorized to be spent under the provisions of this resolve shall be spent upon the improvement and protection of forests and in any other public work which may in the opinion of the State forester be proper. There shall be allowed and paid out of the treasury of the Commonwealth for this purpose the sum of twenty-five thousand dollars, together with any unexpended balances of the amounts appropriated to be used under the provisions of chapter seven hundred and fifty-nine of the acts of the year nineteen hundred and thirteen and chapter five hundred and ninety-six of the acts of the year nineteen hundred and fourteen. . . ." Res. 1915, c. 2. And a second resolve (1915, c. 23) added "fifty thousand dollars" to the appropriation.

It is found that the land of Streeter "was heavily infested, and was a menace to all the neighboring woodland." The directions of the defendant to Philips in substance, "were to find the badly infested places, put at work there those men whom the overseers of the poor of the various towns in Philips' division might recommend as worthy, and utilize such labor in the places that most needed attention. Accordingly . . . at the suggestion of Philips, the overseers of the poor in the town of Hamilton selected certain needy persons, whom they deemed worthy of employment, and placed them under the charge of the superin-

tendent of moths of the town . . . , a public officer appointed by
the selectmen . . . and who was subject to the general advice
and directions of the State forester. He, in turn, placed him-
self, and the men selected . . . under the general direction and
superintendence of the State forester, but more immediately
under the control of . . . Philips, the division superintendent."
The men on the day of the fire "were under the immediate
direction of a foreman . . . an employee of the town," acting
"subject to the general direction of Philips, who . . . occasion-
ally visited the place;" but the defendant "never visited it, and
had no personal knowledge . . . of the details of the work."

The judge having found that this work "was solely directed to
the suppression of the gypsy moth," his further finding that it
"came within the general scope of the defendant's original direc-
tions to" his deputy was warranted. The defendant himself
testified that he controlled the work "through his division moth
superintendent, to whom instructions more or less general in their
nature were given." It is not contended that the resolve of 1915,
c. 2, is unconstitutional. See *Kelly* v. *Bemis*, 4 Gray, 83. That
question is settled by *Burroughs* v. *Commonwealth*, 224 Mass. 28.
The defendant, however, who thus directed and controlled the
work, having acted as a public officer is liable only for acts of
misfeasance done personally or under his personal direction.
*Moynihan* v. *Todd*, 188 Mass. 301, 305. *Barry* v. *Smith*, 191
Mass. 78, 88, 89. See *Farrigan* v. *Pevear*, 193 Mass. 147, 150,
151.

The record leaves no doubt that the men "cleared away and
burned brush; cut down the smaller trees of the kinds in which
the moths most easily propagate . . . , and this was the most
practical method of destroying the gypsy moth." But, the trees
which were cut down having been converted into cord wood, the
plaintiff contends that this act was in excess of the defendant's
statutory authority, or delegated power, and makes him answer-
able in damages. The court in referring to this aspect of the
case in *Burroughs* v. *Commonwealth, supra,* said, after quoting
from the resolve, "Manifestly this language does not authorize
the prosecution of work upon private lands for the benefit of
private owners, but only upon that which may be described
rightly as connected with 'public work'." In the case at bar

the record plainly shows that cutting the trees into cord wood was not done "for the private benefit of Streeter" who subsequently "paid into the State treasury . . . the value of the labor." It is found that, "The burning of the brush and cutting down of the trees was work of a public nature . . . for the sole purpose of suppressing a public nuisance." The judge further states: "There was nothing in the evidence which would justify me in finding that they worked under Streeter's directions, or received any orders from him, or compensation of any nature. Whatever benefit Streeter derived from the work was incidental to the general benefit of the public." We are of opinion that the defendant, if in his judgment the clearing away and burning of the infested brush and branches of the trees which had been felled, also required cording the wood, did not thereby exceed his official authority. The defendant was given discretionary powers which authorized him to "use and require all . . . lawful means of suppressing or preventing said moths," and for that purpose to "lease real estate when he deems it necessary, and . . . at all times to enter upon the land of the Commonwealth or of a municipality, corporation, or other owner or owners, and may use all reasonable means in carrying out the purposes of this act." While he could not lawfully expend public moneys for the express improvement of private property, it by no means follows that, if a landowner may be specially benefited by having his lands freed from a devastating scourge which is destroyed for the public welfare, the whole work ceases to be of a public character and the State forester became a trespasser from the moment he entered upon the property in the performance of his duties.

The record moreover conclusively shows that by the reimbursement not a dollar of the appropriation has been expended for Streeter's private gain. A nuisance of great public concern was to be effectually abated, and in the absence of a statute specifically defining the mode of extermination, the defendant could take such steps as in his judgment were deemed reasonably necessary to thoroughly carry out the paramount purpose for the accomplishment of which all the work was done. *Chase* v. *Proprietors of Revere House, supra. Moynihan* v. *Todd,* 188 Mass. 301, 305. *Kendall* v. *Stokes,* 3 How. 87, 98. *Wilkes* v. *Dinman,*

7 How. 89. 1 Dillon Mun. Corp. (5th ed.) §§ 436–441. See *First Parish in Sherburne* v. *Fiske,* 8 Cush. 264, 266, 267.

In accordance with the terms of the report judgment is to be entered for the defendant.

*So ordered.*