# SUPREME COURT — APPELLATE DIVISION — FOURTH DEPARTMENT.

### May 2, 1923.

## MATTER OF PETITION OF WILLIAM F. LOVE.

### (205 App. Div. 363.)

(1) INTOXICATING LIQUORS—CONSTITUTIONAL LAW—UNDER PENAL LAW, § 1214-G, BUILDING IN WHICH INTOXICATING LIQUOR IS UNLAWFULLY KEPT IS COMMON NUISANCE.

Under Penal Law, § 1214-g, providing that "No person shall maintain any room, house, building, boat, vehicle, structure or place where intoxicating liquor is manufactured, sold, given away, kept or bartered in violation of this article, and all intoxicating liquor and property kept and used in maintaining the same is hereby declared to be a common nuisance," the words "property kept and used in maintaining the same" do not limit the section to the bottles, glasses, boxes, and articles immediately connected with the manufacturing, keeping, serving and sale of the liquor, but must include the building or structure which is thus maintained. In declaring such a building to be a common nuisance the Legislature acted within its well-recognized power.

(2) SAME—PENAL LAW, § 1214-G, IS CONSTITUTIONAL.

The provision of section 1217 of the Penal Law that the court or judge may order that a room, house, building or other structure specified therein which have been declared to be a common nuisance because of a violation of section 1214-g of the Penal Law, shall not be used or occupied for one year thereafter, is not unconstitutional as a deprivation of property without due process of law, but is a reasonable exercise of legislative power for the purpose of suppressing a nuisance.

(3) SAME—OWNERSHIP OF BUILDING IMMATERIAL.

It is immaterial whether or not the owner of the building or other structure, which the court directs shall not be used for one year, is the person who violated the law in reference to keeping and selling intoxicating liquors.

(4) SAME—OWNER NOT ENTITLED TO JURY TRIAL.

In a proceeding of this kind, which is in the nature of an equity action to abate a nuisance, the owner of the building is not entitled to a jury trial.

APPEAL by the defendant, Louisa Nonn, from so much of an order of the County Court of the county of Monroe, entered in

the office of the clerk of said county on the 18th day of December, 1922, as directs that certain premises in the city of Rochester shall not be occupied or used for one year for any purpose.

*Hugh J. O'Brien,* for the appellant.

*William F. Love, District Attorney (Marsh N. Taylor, Assistant District Attorney,* of counsel), for the respondent.

SEARS, J.:

The appellant attacks as unconstitutional the provisions of section 1217, which is in article 113 of the Penal Law (as added by Laws of 1921, chap. 155), known as the State Prohibition Act, to the effect that in a proceeding under that section to restrain the maintenance of a nuisance in connection with the manufacture or sale of intoxicating liquor "the court or judge also may order that such room, house, building, structure, boat, vehicle or place shall not be occupied or used for one year thereafter, or that it shall not be occupied or used during such period for other than dwelling purposes exclusively."

The appellant contends (1) that a house, structure or building in which such liquor is sold is not declared a nuisance by section 1214-g of the Penal Law (as added by Laws of 1921, chap. 155); (2) that the provision that the court may forbid the use of the house for a year is beyond the police power of the State; and (3) that it is also void as denying to the owner of the property a trial by jury. (N. Y. Const., art. 1, § 2.)

The facts are simple. The district attorney of Monroe county filed with the County Court a petition alleging that the defendants, John Nonn and Louisa Nonn, were maintaining a common nuisance at 695 West avenue in the city of Rochester, as defined by section 1214-g of the Penal Law, in that they were there maintaining a building, structure and place where intoxicating liquor was sold, and praying for a restraining

order and general relief. The defendants appeared and, answered the petition admitting their residence at the place specified, but putting in issue all the other allegations of the petition. A trial of the issues thus raised was had and an order was granted finding that the defendants maintained a common nuisance as defined by section 1214-g of the Penal Law in that they maintained a building, structure and place at 695 West avenue, Rochester, N. Y., where intoxicating liquors were sold, given away, kept and bartered, and restraining the sale, barter or storage of intoxicating liquor in such building, and ordering and adjudging further that the building, structure and place at 695 West avenue should not be occupied or used for one year after the date of the order for any purpose. It is from this last provision only that the defendant Louisa Nonn has appealed. By the part of the order not appealed from, the maintenance of the building for the prohibited purpose by both defendants is conclusively established.

The appellant's contention that the building was not a common nuisance is based upon her construction of section 1214-g of the Penal Law, which is as follows: " No person shall maintain any room, house, building, boat, vehicle, structure or place where intoxicating liquor is manufactured, sold, given away kept or bartered in violation of this article, and all intoxicating liquor and property kept and used in maintaining the same is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than one thousand dollars or be imprisoned for not more than one year, or both."

The question rests in the interpretation that is to be given to the words " property kept and used in maintaining the same." The appellant contends that this is to be limited to the bottles, glasses, boxes and articles immediately connected with the manufacturing, keeping, serving and sale of the liquor and not to the structure. or building itself. The appellant's construc-

tion is too narrow. The prohibition of the first part of the section is aimed against the maintenance of a room, house or structure where intoxicants are manufactured or sold, not against the sale alone. The command of the statute binds the person furnishing the premises as well as the manufacturer or vendor of the liquor. It is not the *"maintaining* of liquor" but the maintaining of the *place* for the manufacture or sale of the liquor which is under condemnation. When the words " property kept and used in maintaining the same " occur later in the section, they are clearly referable to the subject of the entire section, that is, the maintenance of the building, etc., and must include the building or structure which is thus maintained as well as its contents.

The structure itself, if so used, is declared to be a common nuisance, and there can be no question that the Legislature acted within its well-recognized power in making such statutory declaration. (Lawton v. Steele, 119 N. Y. 226; Mugler v. Kansas, 123 U. S. 623.)

When by statute such a building is brought within the definition of a common nuisance, the Legislature has unquestioned power to provide means for its abatement. The appellant urges, however, that closing the property for a year to all uses amounts to a deprivation of the owner of property without due process of law; that closing the property is an arbitrary act going far beyond the reasonable limit of legislative discretion. She fortifies her contention by a quotation from the opinion in Lawton v. Steele (supra), as follows: " But the remedy by summary abatement cannot be extended beyond the purpose implied in the words, and must be confined to doing what is necessary to accomplish it. And here lies, we think, the stress of the question now presented. It cannot be denied that in many cases a nuisance can only be abated by the destruction of the property in which it consists. The cases of infected cargo or clothing and of impure and unwholesome food are plainly of this description. They are nuisances *per se* and their

abatement is their destruction. So, also, there can be little doubt, as we conceive, that obscene books or pictures, or implements only capable of an illegal use, may be destroyed as a part of the process of abating the nuisance they create, if so directed by statute. The keeping of a bawdy house, or a house for the resort of lewd and dissolute people, is a nuisance at common law. But the tearing down of the building so kept would not be justified as the exercise of the power of summary abatement, *and it would add nothing, we think, to the justification that a statute was produced authorizing the destruction of the building summarily as a part of the remedy.* The nuisance consists in the case supposed in the conduct of the owner or occupants of the house in using or allowing it to be used for the immoral purpose, and the remedy would be to stop the use. This would be the only mode of abatement in such case known to the common law and the destruction of the building for this purpose would have no sanction in common law or precedent."

Conceding in accordance with this dictum of Judge Andrews that it would be beyond the legislative power to order such a building used for the sale of intoxicating liquors to be razed, does that necessarily require us to hold that it cannot be ordered to remain untenanted for a day? Between these two extremes there must be a line where remedy ceases and unlawful deprivation of private right begins. It is not necessary to trace that line; all that is necessary here is to determine on which side of it our statute falls.

Places where articles are sold acquire a quality known as good will. The tradesman finds it to his profit to continue at the " old stand." So the vendor of intoxicants may reasonably be thought likely to continue to ply his unlawful trade if he continues in occupancy of the same premises subject only to a judicial prohibition added to the legislative one which he has been breaking. To keep the premises vacant is clearly an efficacious abatement of the common nuisance. We do not deem it unreasonable.

In Dowda v. State (203 Ala. 441) a statute was held constitutional which provided for the forfeiture to the State of all illegal plants for the distilling of intoxicating liquors together with the buildings and lots. (See Ala. Gen. Acts of 1919, No. 7, § 12.)

In Chase v. Proprietors of Revere House (232 Mass. 88), the statute having declared places used for lewdness to be common nuisances and in certain cases required that the order of abatement direct the effectual closing of the building or place and the prohibition of its use for any purpose for a period of one year, the court held the statute constitutional. (See Mass. Acts of 1914, chap. 624; Gen. Laws Mass. 1921, chap. 139, § 4 *et seq.*)

The Minnesota Supreme Court, in State ex rel. Wilcox v. Ryder (126 Minn. 95), considered the constitutionality of a statute of that State relating to the abatement of bawdy houses. The statute declared such a place a nuisance and provided for an order of abatement directing the effectual closing of the building or place against its use for any purpose " for a period of one year, unless sooner released." (See Minn. Laws of 1913, chap. 562; Gen. Stat. Minn. 1913, § 8717 *et seq.*) The court, after stating that the act of maintaining a nuisance was not necessarily criminal in its nature and that by due process of law specific forfeitures might be imposed for specific acts, including even total destruction of property *per se* innocent, when such fairly tended and was reasonably necessary to accomplish a legitimate purpose under the police power, said: " Finally, is the act in its remedial details a proper exercise of the police power? The subject-matter being within such power, the test is reasonableness, which involves a dual limitation, positive and negative, namely, adaptability to the end sought and absence of excessiveness—the measure must, on the one hand, tend to accomplish the purpose of its adoption, and, on the other, must not go beyond the reasonable demands of the

30

occasion.    In our opinion the remedies provided by the act stand the test.    'A large discretion is necessarily vested in the Legislature, to determine not only what the interests of the public require but what measures are necessary for the protection of such interests.'    (State ex rel. Beek v. Wagener, 77 Minn. 483, 495.)"

Babcock v. City of Buffalo (56 N. Y. 268) and Ely v. Supervisors of Niagara County (36 id. 297) are cases where the remedies provided failed to stand the test of reasonableness.

The statute of New York here in question declares certain premises common nuisances and makes provisions for their abatement which in our opinion are not unreasonable.    This being the purpose of the statute, the ownership of the premises is immaterial.    It may be hard for an owner to have his property closed a year because of the unlawful act of the tenant, but as was said in Chase v. Proprietors of Revere House (supra), " If the evidence shows and the judge finds, that the building, place or any part of it has been so used, it is legally wholly immaterial that the owner did not know of it."    The place is the nuisance although made so by its use and abatement runs against the property and not against the person."

The third objection of the appellant, that she has been deprived of her constitutional right to a jury trial, falls as a corollary to the point we have been discussing.    Action *in personam* to impose penalties and forfeitures must be tried by a jury under our Constitution (Colon v. Lisk, 153 N. Y. 188, affg. 13 App. Div. 195), but this is not such, but is a proceeding in the nature of an equity action to abate a situation which the law has declared a common nuisance.    It is *in rem* so far as the closing of the building is concerned.    The remedy is by order in the nature of a judgment in an equity action.    That the Legislature may provide for the abatement of nuisances by equitable action is well settled.    (Lawton v. Stele, supra ; Chase v. Proprietors of Revere House, supra ; State ex rel. Wilcox v. Ryder, supra ; King v. Commonwealth of Kentucky ex rel.

Smith, 194 Ky. 143, 238 S. W. 373, 22 A. L. R. 535, and note.)

The instance before us does not fall within any class where a right to a jury trial existed at the time the constitutional provision took effect.

The order should be affirmed.

All concur.

Order affirmed, without costs.